# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

     Plaintiff.

     v.

THOMAS C. BALSIGER,
BRUCE A. FURR,
STEVEN A. FURR,
LANCE A. FURR,                     Case No. 07-Cr-57
WILLIAM L. BABLER,
OVIDIO H. ENRIQUEZ,
DAVID J. HOWARD,
JAMES C. CURREY,
HOWARD R. MCKAY,
DAXESH V. PATEL and
BHARATKUMAR K. PATEL,

     Defendants.

# DECISION AND ORDER

On March 6, 2007, a federal grand jury in this district returned a 25-count indictment against International Outsourcing Services, LLC (IOS), and eleven individual defendants charging them with wire fraud in violation of 18 U.S.C. §§1343 and 2.  On December 5, 2007, a 27-count superseding indictment against the eleven individual defendants only was returned by the federal grand jury.  IOS was not charged in the superseding indictment. The superseding indictment added two counts, Counts 26 and 27.  Count 26 charges all defendants with conspiracy to commit wire fraud in violation of 1 U.S.C. § 1349.  Count 27 charges defendants Thomas C. Balsiger, Bruce A. Furr, Lance A. Furr, William L. Babler, Ovidio H. Enriquez, David J. Howard and James C. Currey with conspiracy to obstruct

justice in violation of 18 U.S.C. §§ 371 and 2.  Both the initial indictment and the superseding indictment contain forfeiture provisions.

In an amended scheduling order issued on November 18, 2008, the court, at the request of defendants Steven and Bruce Furr (Furr defendants for purposes of this decision only), ordered these two defendants to file their pretrial motions on or before December 18, 2008.  Pursuant to that order, defendants Steven and Bruce Furr filed the following pretrial motions: a motion for a speedy trial (Docket #230), a joint motion to dismiss the superseding indictment for violations of their Sixth and Fifth Amendment rights (Docket #256), a motion for a bill of particulars regarding forfeiture allegations (Docket #257) and a motion to sever defendants (Docket #258).

Defendant Bruce Furr, individually, filed a motion to dismiss the superseding indictment for Fifth Amendment due process violations (Docket #254), a motion to suppress any evidence seized from his office on May 16, 2005, (Docket #261), and a motion for a bill of particulars.  (Docket #262).  Defendant Steven Furr, individually, also filed a motion for a bill of particulars.  (Docket #253).  In addition, defendants Thomas Balsinger, Steven Furr, Bruce Furr, Lance Furr, William Babler, David Howard, James Currey and Howard McKay filed a joint motion to transfer venue to the Eastern District of Texas, El Paso Division.  (Docket # 255).

This court will address defendants Bruce Furr's and Steven Furr's: 1) motions for a bill of particulars  (Docket ##262 and 253); 2) joint motion for a bill of particulars regarding forfeiture allegations (Docket #257), and 3) joint motion to sever defendants (Docket #258); and 4) joint motion for a speedy trial. (Docket #230).  The court also will address defendants Thomas Balsinger, Steven Furr, Bruce Furr, Lance Furr, William Babler, David Howard,

James Currey and Howard McKay's joint motion to transfer venue to the Eastern District of Texas (Docket # 255). The remaining motions will be addressed in separate decisions.

<u>**MOTIONS FOR A BILL OF PARTICULARS**</u>
(**Docket ## 253, 262**)

Defendants Steven Furr and Bruce A. Furr have filed motions for a bill of particulars. Defendant Steven Furr seeks an order with respect to the superseding indictment requiring the government to provide a bill of particulars with regard to six specific categories: 1) cement mixer (page 7, ¶ 18); 2) fraudulent coupon submission (page 7, ¶¶ 17a-d, 19, and 20); 3) accounting issues (pages 7-8, ¶ 21; page 9,¶ 25; and pages 9-10, ¶ 28); 4) board members (page 9, ¶ 26); 5) concealment from law enforcement (page 9, ¶ 27); and 6) private investigator (page 10, ¶ 29). Specifically, Steven Furr wants the government to identify whether there is any evidence linking him to these particular allegations in the superseding indictment.

Defendant Bruce Furr wants the government to disclose the following information in a bill of particulars based on the superseding indictment: 1) obstruction of justice - Kari Costello litigation (identification of whether there is any clause in the final separation agreement between International Outsourcing Services and Ms. Costello that prohibits her from talking to any governmental agency; 2) obstruction of justice – store tag defense (identification of specific information set forth in Count 27 ¶¶ 53j-l, n-p, and u-v); 3) private investigator (page 10, ¶ 29); 4) fraudulent coupon submission (page 7, ¶¶ 17a-c, 19); 5) accounting issues (pages 7-9, ¶¶ 21, 24, and 25); and 6) cement mixer (page 7, ¶ 18).

Defendant Steven Furr asserts that other than to describe his position in the company, the superseding indictment contains only one specific factual allegation against him. Specifically, he cites pages 8-9, ¶ 24 of the superseding indictment which states:

> [A]s part of the scheme, Chris Balsiger, Bruce Furr, Steven Furr and Lance Furr, and others took steps to conceal their scheme from the innocent retailers whose accounts at IOS were used to launder the diverted coupons. These steps included providing false and misleading information to retailers regarding the volume of coupons billed in the retailer's name as well as false information regarding IOS's coupon-processing and invoicing practices.

(Defendant Steven Furr's Motion and Memorandum in Support of a Bill of Particulars [Defendant Steven Furr's Memorandum – Bill of Particulars] at 1-2). He contends that these allegations are inadequate to enable him to prepare his defense. He further states that he "seeks only to know whether evidence exists linking him to certain acts described in the Superseding Indictment." (Reply in Support of Defendant Steven Furr's Motion for a Bill of Particulars at 2).

Defendant Steven Furr also maintains that the vast majority of the voluminous discovery materials do not involve him and that he will be required to find the "needle in the haystack" when analyzing the charges against him and preparing a defense. (Defendant Steven Furr's Memorandum – Bill of Particulars at 3). He acknowledges that the government is following its open file policy and that his counsel has had informal discussions with government counsel over a year ago at which time the government identified a number of documents believed to be important to the case against him. Although helpful, defendant Steven Furr states that he has no way of knowing if the government's theory has changed since those discussions. Therefore, he asserts that a bill of particulars is necessary.

In response, the government points out that it is following its open file policy in this case. Therefore, it asserts that defendant Steven Furr has access to all relevant discovery information pertaining to the superseding indictment which obviates the need for a bill of particulars, citing United States v. Fassnacht, 332 F.3d 440, 447 n.2 (7th Cir. 2003). The government also states that although the documents in this case are voluminous, the documents provided to the defendants are in large part available in searchable electronic format. Thus, defendant Steven Furr can readily identify which documents refer to him or to any other defendant or subject.

In a further attempt to assist defendant Steven Furr, the government states that in April 2008, it provided his counsel with a packet containing more than 200 pages of discovery material relating to defendant Steven Furr. The government maintains that although the superseding indictment does not contain the kind of specificity the defendant seeks, it is adequate to enable him to prepare a defense. The government states that the "superseding indictment's main charge is a multi-year scheme to defraud, whereby Steven Furr's family's company IOS – for which he has worked most if not all of his adult life – allegedly took coupons it supposedly received from small stores and invoiced these coupons to manufacturers through larger stores in order to defeat manufacturers' fraud controls and increase the likelihood of payment, to the tune of hundreds of millions of dollars." (Government's Response to Steven Furr's Motion for a Bill of Particulars at 5).

Finally, the government states that as recently as early February 2009, the government had agreed to assist defendant Steven Furr's counsel to locate pertinent

discovery materials. The government indicates that this cooperation will continue. Therefore, the government asserts that the motion for a bill of particulars should be denied.

In his motion, defendant Bruce Furr states that Counts 1-26 of the superseding indictment contain only two sets of factual allegations against him by name, specifically citing ¶¶ 24, 25 and 28(a) of the superseding indictment. He further states that these counts "also identify Bruce Furr by name in the wholly-conclusory allegation that Bruce Furr 'knew or had reason to know' of the allegedly fraudulent activities of the Patel defendants." (Defendant Bruce Furr's Motion For and Memorandum of Law in Support of a Bill of Particulars [Defendant Bruce Furr's Memorandum – Bill of Particulars] at 2) (quoting superseding indictment, page 7, ¶ 20). He also claims that he is not mentioned by name in any of the eight subparagraphs he identifies as relating to the "store tag defense." Defendant Bruce Furr further claims that the allegations in the superseding indictment are vague and inadequate to enable him to prepare his defense.

He also asserts that "the Superseding Indictment fails to specify places, and other persons involved in meetings and events that the United States claims were part or in furtherance of a complex fraud." (Bruce A. Furr's Reply Memorandum in Support of His Motion for a Bill of Particulars at 7). Because of this, and given the special circumstances of his age, health and memory, he asserts that he needs further basic information to adequately prepare his defense.

In response, the government reiterates that it is following its open file policy and that although the documents are voluminous, they are largely in searchable electronic format. As a result, the government asserts that defendants can easily identify the documents

which refer to each of them or to a particular subject. In addition, the government states that it has provided a packet of discovery materials directly relating to defendant Bruce Furr's culpability to his counsel and also has directed counsel to pertinent materials relating to the May 2006 search warrant, including a two-page, single spaced letter of May 6, 2003, under defendant Bruce Furr's signature as IOS Chairman to counsel for HEB, a Texas grocery store chain that was an IOS funded account customer at the time. The government maintains that the superseding indictment, including Count 27, is sufficiently specific and more than adequate to permit defendant Bruce Furr to prepare a defense.

## ANALYSIS

Rule 7(f) of the Federal Rules of Criminal Procedure allows, in conjunction with the issuance of an indictment, "for the filing of a bill of particulars — a more specific expression of the activities defendant is accused of having engaged in which are illegal." United States v. Canino, 949 F.2d 928, 949 (7th Cir. 1991). The purpose of a bill of particulars is to inform a defendant of the nature of the charges against him so that he will have a sufficient opportunity to prepare for trial. United States v. Kendall, 665 F.2d 126, 134 (7th Cir. 1981). The trial court has discretion to grant or deny a request for a bill of particulars and the trial court's decision denying a bill of particulars will not be overturned without a showing of an abuse of discretion. United States v. Fassnacht, 332 F.3d 440, 446 (7th Cir. 2003); Canino, 949 F.2d at 949.

The test for determining whether a bill of particulars should be granted is similar to the test for determining the general sufficiency of the indictment, namely, "whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." Fassnacht, 332 F.3d at 447

(quoting United States v. Kendall, 665 F.2d 126, 134 [7th Cir. 1981]); Canino, 949 F.2d at

949. "An indictment which includes each of the elements of the offense charged, the time

and place of the accused's conduct which constituted a violation, and a citation to the

statute or statutes violated is sufficient to pass this test." Fassnacht, 332 F.3d at 446.

"Once the elements of the crime have been specified, an indictment need only

provide enough factual information to enable the defendants to identify the conduct on

which the government intends to base its case." Id. Indeed, a bill of particulars is not

required when a defendant can obtain the information necessary for his or her defense

through "some other satisfactory form." Id. at 447 n.2 (quoting United States v. Canino, 949

F.2d 928, 949 [7th Cir. 1991]) (other citation omitted). Further, if from reading the

indictment the defendant could reasonably anticipate the evidence to be introduced at trial,

the denial of the motion does not prejudice the defendant. United States v. Andrus, 775

F.2d 825, 843 (7th Cir. 1985).

Evidentiary details of the government's case are specifically not subject to discovery

by means of a bill of particulars. United States v. Glecier, 923 F.2d 496, 501-02 (7th Cir.

1991) (The Constitution does "not require the government to reveal the details of how it

plans to prove its case."). Nor is a bill of particulars intended to compel the government to

make a detailed disclosure of its evidence or to reveal the theory of its case. Id. at 502;

United States v. Johnson, 504 F.2d 622, 628 (7th Cir. 1974) ("It is well settled that a bill of

particulars cannot be used to obtain a list of the government's witnesses, or evidentiary

detail."). United States v. Brock, 863 F. Supp. 851, 857 (E.D. Wis. 1994).

Thus, to the extent the defendants seek disclosure of the government's theory of

prosecution, such disclosure is not properly obtained pursuant to a motion for a bill of

particulars.  See Glecier, 923 F.2d at 502; United States v. Amidzich, 396 F. Supp. 1140, 1143 (E.D. Wis. 1975).  Simply stated, a defendant is entitled to know the offense with which he is charged, but he is not entitled to know the details of how it will be proved. Fassnacht, 332 F.3d at 446; United States v. Kendall, 665 F.2d 126, 135 (7th Cir. 1981).

In this case, the government is following its "open file" policy and defendants Steven and Bruce Furr have received relevant and discoverable information contained in the government's file.  In their motions, defendants Steven and Bruce Furr are seeking detailed information about any evidence linking them to specific allegations.  Defendant Steven Furr, for example, wants the government to "[i]dentify whether there is any evidence linking [him]" to specific allegations set forth in his motion. (Defendant Steven Furr's Memorandum – Bill of Particulars at 4-7).

Similarly, defendant Bruce Furr wants the government to disclose if certain specific matters alleged in the superseding indictment occurred in the State of Indiana where he resided and worked.  He also wants the government to identify what steps he took to conceal the scheme from the innocent retailers as alleged in paragraph 24 on pages 8-9 of the superseding indictment.  In essence, these defendants are seeking evidentiary detail of the government's case.

Furthermore, defendant Steven Furr states that he does not know now if the government has changed its theory of its case and needs a bill of particulars to cure this and other problems.  See Defendant Steven Furr's Memorandum – Bill of Particulars at 4. It is well-established that a motion for a bill of particulars cannot be used to obtain evidentiary details of the government's case or the government's legal theory. Gleicier, 923 F.2d at 501-02; Johnson, 504 F.2d at 628.

- 9 -

Although the discovery materials are extensive, these defendants have been provided discovery documents on CDs in searchable format. Thus, they can specifically identify documents that refer to them, other defendants and subjects. In addition, defendant Steven Furr was provided with in excess of 200 pages of discovery materials specifically relating to him. Counsel for defendant Bruce Furr also was provided a packet of discovery materials directly relating to his client's culpability and, in addition, the government has directed counsel to relevant materials relating to the May 2006 search warrant. Included in these materials was a May 6, 2003, letter under defendant Bruce Furr's signature to HEB, an IOS funded account customer. Finally, the government has agreed to assist counsel for Steven Furr to locate pertinent discovery materials.

The government is following its "open file" policy. Therefore, any arguable need for a bill of particulars has been obviated where, as here, the defendants have been provided with access to discoverable information in the government's file. Canini, 949 F.2d at 949.

Moreover, although defendants Steven and Bruce Furr's reliance on United States v. Wen, 2005 U.S. Dist. LEXIS 19531 (E.D. Wis. 2005), the case is clearly distinguishable. The defendant was charged with, among other offenses, conspiracy to violate export restriction, with failing to obtain export licenses and making false representations about the value of exported shipments. The court stated that the indictment was unclear as to the origin of "Restricted Part Numbers" used to describe the exported items. The indictment did not state whether the parts numbers were internal numbers used by the defendant's business, or assigned by the manufacturer or proscribed in one of the export regulations, "or perhaps parts numbers unrelated to the item itself, designated for purposes of shipping and tracking. Id. at *24. The court also observed that problems with discovery relating to

the parts numbers.  In light of these concerns, the court granted the defendant's motion for a bill or particulars and specifically required the government to identify the alleged restricted item by its Export Control Classification Number.

In this case, there is no indication that the discovery materials, although voluminous, are confusing to the extent found in <u>Wen</u>.  In addition, the government has provided documents and  access to physical evidence pursuant to its open file policy.  A bill of particulars "is not required when information necessary for a defendant's defense can be obtain through "some other satisfactory form.  <u>United States v. Canino</u>, 949 F.2d 928 (7th Cir. 1991) (citation omitted.

Thus, upon review, the court concludes that the superseding indictment apprises the defendants Steven and Bruce Furr of the nature of the charges against them to enable them to prepare a defense and to plead double jeopardy in any subsequent prosecution for the same offense.  The information sought by the defendants goes beyond the bounds of information obtainable in a bill of particulars.  Moreover, the government has provide the defendants with extensive pretrial discovery in a usable searchable format further which obviates the need for a bill of particulars.  <u>See</u> <u>Fassnacht</u>, 332 F.3d at 447; <u>Canino</u>, 949 F.2d at 949.  The government also has agreed to further assist counsel in locating pertinent discovery documents.  Accordingly, the motions for a bill of particulars filed by defendants Steven Furr and Bruce Furr will be denied.  (Docket ## 253, 262, respectively).

## MOTION FOR BILL OF PARTICULARS – FORFEITURE PROVISION
### (Docket # 257)

Defendants Bruce Furr and Steven Furr have moved for a bill of particulars regarding the forfeiture provision in the superseding indictment.  They assert that the Government's Damage Calculation (attached to their motion as Exhibit A) does not provide a sufficient explanation of the $250,000,000 forfeiture figure and, therefore, they are unable to adequately prepare their defense.  They further state that the government did not provide any of the backup documentation to support how the amounts included in the exhibit were calculated.

Defendants Bruce and Steven Furr specifically request the following particulars:

1) "the names of any employees, experts or other individuals who have calculated this $250,000,000 figure and/or who will testify in support of the forfeiture data, including but not limited to, that set forth in the Government's Damage Calculation;" 2) "any and all corroborative documents supporting clients' account work papers, reports or tests for any estimate figures or percentages in support of any forfeiture data, including but not limited to, that set forth in the Government's Damage Calculation;" and 3) "any other underlying documentation supporting the Government's Damage Calculation of Forfeiture in the amount of $250,000,000." (Motion of Defendants Bruce A. Furr and Steven A. Furr for a Bill of Particulars Regarding Forfeiture Allegations at 1-2).

In response, the government points out that defendants Bruce and Steven Furr cite no authority in support of their motion and asserts that they are not entitled to the information they seek.  The government also points out that it is following its open file policy in this case.

The government further states that it generally described its calculations in a spreadsheet provided to counsel for defendant Steven Furr on December 17, 2007. The government explains that the spreadsheet analyzes IOS-controlled bank accounts for 10 funded retail accounts and compares, in separate vertical columns "(1) the money paid into each account by manufacturers for coupon reimbursements; (2) the amount which IOS paid the retailer; and (3) the amount remaining." (Government's Response to Bruce A. Furr and Steven A. Furr's motion for Bill of Particulars Regarding Forfeiture Allegations at 2). The government then explains the calculations made to arrive at a forfeiture figure of $250,000,000. In its brief opposing the motion the government included an expanded Exhibit A which contain "records of IOS or its auditor BKD that contain explanations of the scheme and some figures demonstrating a slice of the scheme and forfeiture amount." Id.

## ANALYSIS

The "Forfeiture Notice" contained in the superseding indictment provides in pertinent part:

> 1. Upon conviction of one or more of the offenses alleged in Counts One through Twenty-six of the Indictment, the defendant(s) shall forfeit to the United States, pursuant to 18 U.S.C § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853, all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, including but not limited to the following:
>
> > a. A sum of money equal to $250,000,000 in United States currency, representing the amount of proceeds obtained as a result of the defendants' wire fraud scheme, for which the defendants are jointly and severally liable.

(Superseding Indictment, ¶1 at 23). The notice also provides that if the $250,000,000 in currency is not available to be forfeited for the listed reasons, then the government seeks

forfeiture of specified real property located in several states, particular vehicles and cash and other assets.

Rule 7(c)(2) of the Federal Rules of Criminal Procedure provides: "[w]hen an offense charged may result in a criminal forfeiture, the indictment or information shall allege the extent of the interest or property subject to forfeiture."  The government is not required to list all forfeitable interests in the indictment as long as the indictment provides notice to the defendants that the government will seek to forfeit property acquired in violation of the statute.  See United States v. DeFries, 129 F.2d 1293, 1315 (D.C.Cir 1997); United States v. Grammatikos, 622 F.2d 1013, 1024 (2nd Cir. 1980).

In this case, this condition was satisfied since the superseding indictment stated that the government would seek property and proceeds of the defendants derived from the commission of the charged offenses.  The government seeks the gross proceeds traceable to the illicit activities and, if the funds are not available, it enumerates the items, including specific real property, vehicles and other assets it seeks to forfeit.  Moreover, the defendants have been provided with the Government's Damage Calculations, as well as its spreadsheet attached to its brief as Exhibit A which analyzes IOS-controlled bank accounts for 10 funded retail accounts.  The spreadsheet compares the money paid into each account by manufacturers for coupon reimbursement, the amount IOS paid the retailer and the amount remaining.  In addition, the government is following its open file policy in this case and has provided relevant and discoverable information to the defendants.

While the defendants might want additional details, such as the names of individuals who made the damage calculations and will testify as witnesses at trial and identification of specific corroborative documents, such information need not be produced in a bill of particulars in this case, The superseding indictment provides the defendants with the requisite notice required by Fed. R. Crim. P. 7(c)(2).  Therefore, the motion of defendants Bruce and Steven Furr for a bill of particulars with the respect to the forfeiture provision in the superseding indictment will be denied.

## MOTION FOR SEVERANCE
### (Docket #258)

Defendants Bruce Furr and Steven Furr had filed a motion pursuant to Fed. R. Crim. P 14(a) to sever their trial from that of the other defendants in this case.  The defendants assert that they are entitled to severance because of the large number of defendants, the massive and complex evidence, and the gross disparity in the nature and quantity of the evidence between them and their co-defendants.  They further cite the inflammatory and prejudicial evidence related to Count 27, the conspiracy to obstruct justice count, and contend that severance is the only way to effectuate a speedy trial for them.  Defendants Steven and Bruce Furr focus largely on the alleged false submission of the "store tag defense" charged in Count 27.  They maintain that the prejudice caused by the "store tag defense" evidence cannot be cured by a limiting instruction.  Since he was not charged in Count 27, defendant Steven Furr states that the "store tag" evidence would not be admissible against him if he were tried alone.

Defendants Bruce and Steven Furr further contend that their right to a speedy trial cannot be effectuated without severance.  They claim that they have asserted "relatively few

privilege claims" which the court can quickly resolve so that they can proceed to trial. (Reply in support of defendants Bruce A. Furr and Steven A. Furr's Motion for Severance at 3).

The government opposes the defendants' motion. The government explains that the superseding indictment added two counts: a wire fraud conspiracy (Count 26) and an obstruction of justice conspiracy (Count 27). Both Steven Furr and Bruce Furr are charged in Count 26 and defendant Bruce Furr is charged in Count 27. The government further states that although defendant Steven Furr is not charged in Count 27, he could be an unindicted co-conspirator or possibly could be named in Count 27 in a second superseding indictment, depending upon certain discovery materials. The government also points out that both of these defendants have moved, in the alternative, for a Fed. R. Crim. P. 21(b) transfer to the Western District of Texas and thereby apparently are willing to forego their severance motion if they can be jointly tried in the Western District of Texas.

## ANALYSIS

When defendants have been properly joined under Rule 8(b), the court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). It is well-settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. Id. at 540. A defendant must show that denial of severance caused him actual prejudice that deprived him of his right to a fair trial. United States v. Rollins, 301 F.3d 511, 518 (7th Cir. 2002) (citations omitted). Furthermore, there is a strong preference for a single trial with co-defendants who have been jointly indicted. United States v. Souffront, 338 F.3d 809, 828 (7th Cir. 2003).

Rule 14(a) of the Federal Rules of Criminal Procedure provides:

> If joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

However, "Rule 14 does not require severance, even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Souffront, 338 F.3d at 828 (quoting Zafiro, 506 U.S. at 538-39).

A decision to grant or deny a motion for severance under Rule 14 will only be reversed for an abuse of discretion. United States v. Hogan, 886 F.2d 1497, 1506 (7th Cir. 1989). The reason for such deference is that, where joinder is proper under Fed. R. Crim. P. 8, there are substantial economies to be gained from a joint trial. United States v. Velasquez, 772 F.2d 1348, 1353 (7th Cir. 1985). The general policy is that persons jointly indicted be tried together, especially in conspiracy cases. United States v. Peters, 791 F.2d 1270, 1301 (7th Cir. 1986); United States v. Giangrosso, 779 F.2d 376, 379 (7th Cir. 1985). A joint trial of co-conspirators is presumptively appropriate. United States v. Caliendo, 910 F.2d 429, 437 (7th Cir. 1990). However, the public interest in having joint conspiracy trials does not override the need to ensure defendants a fair trial. Peters, 791 F.2d at 1302.

In deciding a motion for severance, the court should balance the interests of the defendant in severance against the government's interest in judicial economy. United States v. Rivera, 825 F.2d 152, 159 (7th Cir. 1987). The "danger of prejudice to the least guilty, or perhaps prejudice to all from the sheer confusion of a multi-defendant trial, is in all but the most unusual circumstances considered outweighed by the economies of a single trial in which all facts of the crime can be explored once and for all." United States

v. Shorter, 54 F.3d 1248, 1258 n.21 (7th Cir. 1995) (quoting United States v. Velasquez, 772 F.2d 1348, 1352 [7th Cir. 1985]).

The Court of Appeals for the Seventh Circuit has outlined four settings in which actual prejudice might result from a denial of a motion for severance: "(1) conflicting and irreconcilable defenses; (2) a massive and complex amount of evidence that makes it almost impossible for the jury to separate evidence as to each defendant; (3) a co-defendant's statement that incriminates the defendant; and (4) a gross disparity of evidence between the defendants." United States v. Clark, 989 F.2d 1490, 1499 (7th Cir. 1993); United States v. Oglesby, 764 F.2d 1273, 1276 (7th Cir. 1985).

Defendants Steven and Bruce Furr cite the massive and complex amount of evidence and the disparity of evidence and resultant evidentiary spillover as grounds for severance. Assuming the validity of their contentions, to succeed on a claim of prejudice due to disparities in the evidence, a criminal defendant must rebut the presumptions that a jury will: 1) capably sort through the evidence and 2) follow instructions from the court to consider each defendant separately. United States v. Edwards, 36 F.3d 639, 647 (7th Cir. 1994) United States v. Lopez, 6 F.3d 1281, 1286 (7th Cir. 1993). "Mere speculation of 'spill over guilt' is not enough to rebut these twin presumptions." Lopez, 6 F.3d at 1286 (citing United States v. Doerr, 886 F.2d 944, 972 [7th Cir. 1989]). Moreover, "a simple 'disparity in the evidence' will not suffice to support a motion for severance – i.e. it does not independently establish 'actual prejudice.'" Caliendo, 910 F.2d at 438. It is well-settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. Zafiro, 506 U.S. at 540.

The general rule is that where a variance of culpability and disparity of evidence between defendants exists or where there is complex and massive evidence, other less drastic alternatives to severance should first be explored. See United States v. Pulido, 69 F.3d 192, 208 (7th Cir. 1995); United States v. Papia, 560 F.2d 827, 837 (7th Cir. 1977). The court generally handles differing evidence between defendants through limiting instructions. A joint trial is appropriate and preferred in the federal system if "it is in the jury's capacity, given the complexity of the case, to follow admonitory instructions and to keep separate, collate and appraise the [relevant] evidence." Pulido, 69 F.3d at 208 (quoting United States v. Moya-Gomez, 860 F.2d 706. 768 [7th Cir. 1988]). Thus, the presumption is that a jury "will (1) capably sort through the evidence and (2) follow limiting instructions from the court to consider each defendant separately." United States v. Stillo, 57 F.3d 553, 557 (7th Cir. 1995) (quoting Lopez 6 F.3d at 1286).

Here, both defendants Steven Furr and Bruce Furr are charged in Count 26 with conspiracy to commit wire fraud. A joint trial of co-conspirators is presumptively appropriate. Caliendo, 910 F.2d at 437. Defendant Bruce Furr is also named in Count 27, which alleges a conspiracy to obstruct justice. Although defendant Steven Furr is not charged in Count 27, the court can address this issue through limiting instructions to the jury. The defendants have not persuaded this court that they are entitled to severance because the massive and complex evidence at trial would be unmanageable and create significant problems for the jurors. Similarly, with respect to the alleged disparity in the evidence, there is no indication that the jury would have difficulty following the court's instruction to consider the evidence as to each defendant separately. See Stillo, 57 F.3d

at 557. Rather, the defendants merely make conclusory assertions that the jury will not be able to compartmentalize the evidence as to each defendant.

As noted, defendants Bruce and Steven Furr further assert that their right to a speedy trial cannot be effectuated without severance. Contrary to their assertions that they have asserted "relatively few privilege claims," they have asserted privilege as to several hundred documents. Moreover, they do not take into account that they are charged as co-conspirators with the other defendants in a conspiracy to commit wire fraud beginning by 1997 and continuing through December 2006. See Superseding Indictment, Count 26. It is well established that persons jointly indicted generally should be tried together, particularly in conspiracy cases. Peters, 791 F.2d at 1301.

The court concludes that defendants Bruce and Steven Furr have not overcome the presumption that a joint trial of co-conspirators is appropriate in this case. Caliendo, 910 F.2d at 437. Nor have they shown that the jury will be unable to sort through the evidence and follow the limiting instructions of the court. See Pulido, 69 F.3d at 208. In sum, defendants Steven Furr and Bruce Furr have not established a basis for severance and, accordingly, their motion for severance will be denied. (Docket #258).

## MOTION FOR A SPEEDY TRIAL
(Docket #230)

Defendants Bruce A. Furr, Lance Furr and Steven Furr previously moved the court to set a trial for September 2007 pursuant to the Speedy Trial Act, 18. U.S.C. § 3161 et seq. and the United States Constitution or, in the alternative, for a November 2007 trial date. (Docket #88). In a July 9, 2007, decision and order the court denied the defendants' motion, concluding that because of the number of defendants, the magnitude of the

charges, the overwhelming amount of discovery material and physical evidence, the pending grand jury-related matters and the real and potential privilege litigation, the ends of justice served by granting a continuance of the speedy trial deadlines outweighed the best interests of the public and the Furr defendants in a speedy trial.

The grounds for their current motion are almost identical to the grounds for their previous motion: 1) defendant Bruce Furr suffers from serious health issues which are exacerbated by this pending and protracted litigation, and 2) they have asserted as privileged comparatively few documents to date.

The government opposes this motion, contending that the case is complex, involving voluminous documents and unresolved privilege litigation. In addition, the government asserts that since the court's July 2007, order, the magnitude of the charges only has increased. The government points out that in the superseding indictment returned in December of 2007, the grand jury alleged that many of the defendants, including Bruce and Lance Furr, took part in a wide-ranging conspiracy designed to obstruct the grand jury in the case. The conspiracy continued past the return of the original indictment.

The government maintains that the complexity of the case has generated an enormous amount of discovery, including 500,000 pages of bate-stamped materials in electronic format as well as dozens of additional CDs, DVDs, computer hard drives, audio recordings, and other electronic media. Additionally, there is in excess of 10 tons of physical evidence, which include coupon shipments and business records taken in search warrants.

In addition to the volume of discovery, the government asserts that the pending privilege litigation makes a February 2009 trial date impossible. The government maintains

that defendants Bruce and Steven Furr have jointly asserted privilege for at least 1500 documents, their co-conspirators have asserted claims for thousands of additional documents and those privilege assertions will affect the timing of their joint trial and will impact what evidence is admitted against them pursuant to Fed. R. Evid. 801(d)(2)(E). The government further asserts that additional privilege claims made by defendant Lance Furr remain pending before United States District Judge Lynn Adelman in Case No. 06-Misc.-46 (LSA).

The government contends that Bruce and Steven Furr's claims of financial strain and suggestion of improper parallel proceedings are meritless and unsupported. The government asserts that it did not demand that IOS cancel Bruce Furr's salary and the cooperation agreement did not address that issue. Rather, IOS's then CEO had removed Bruce Furr from his position before he initiated discussions with the government regarding cooperation. Additionally, in agreeing to enter into a cooperation agreement with the government, IOS agreed to appoint a monitor and provide transparency as to its business practices. With respect to Bruce and Steven Furr's allegations that the SEC attempted to gain discovery for the instant case, the government maintains that it has not sought SEC involvement, has not used the SEC to obtain discovery and is not aware of what discovery, if any, was obtained by the SEC.

The government further states that it does not doubt that defendant Bruce Furr's health condition is serious and pledges to consider this when addressing future scheduling and when attempting to resolve this case. The government requests that the court deny the defendant's motion for a February trial date and enter an appropriate order excluding time under the Speedy Trial Act.

## ANALYSIS

Section 3161(h) of Title 18 of the United States Code sets forth certain periods of delay which shall be excluded in computing the time within which the trial of an offense must commence. Section 3161(h)(7)(A) provides for the exclusion of: "Any period of delay resulting from a continuance granted by any judge . . . at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." In making this determination, the court shall consider certain factors, such as whether the case "is so unusual or so complex, due to the number of defendants, the nature of the prosecution or the novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(7)(B)(ii).

This case involves eleven individual defendants who are charged in a far-ranging 27-count superseding indictment. The government has provided the defendants over 500,000 pages of Bate-stamped materials in electronic format, as well as dozens of additional CDs, DVDs, computer hard drives, audio recordings and other electronic media. In addition, a warehouse contains ten tons of physical evidence, including coupon shipments and business records taken in search warrants.

As of October 30, 2008, Bruce and Steven Furr had asserted privilege as to hundreds of document. In their reply brief filed on December 4, 2008, they stated that they were in the process of significantly reducing the number of privilege assertions. Although they assert that the court need not resolve all of the outstanding privilege issues for the

other defendants before setting a trial date for them, the court seeks to conduct one trial with all defendants so as to conserve limited judicial resources.

Additionally, although defendants Bruce and Steven Furr asked for a February 2009 trial date, in addition to their motion for a speedy trial, they have filed other pretrial motions which were not fully briefed until March 2, 2009.  In fact, as to their joint motion to dismiss the superseding indictment for violations of their Sixth Amendment and Fifth Amendment rights, defendants Bruce and Steven Furr were granted an extension of time to file their joint memorandum in support of the motion.  See Docket #267.  Defendant Bruce Furr also requested and was granted an extension of time to file his memorandum in support of his motion to dismiss the superseding indictment.  Id.  The court also granted their motion for modification of  the briefing schedule for certain motions filed on January 16, 2009.  See Docket #270.  As a result, their reply briefs in support of their motions were not filed until March 2, 2009.[1]

The court has carefully reviewed the submissions of the parties.  The court is not insensitive to concerns of the defendants Bruce and Steven Furr and, as stated in its earlier decision and order, it will make every effort to facilitate the resolution of this case as promptly as possible.  Nonetheless, given the number of defendants, the magnitude of the charges, the almost overwhelming amount of discovery materials and physical evidence, the pending grand jury-related matter and the privilege litigation, the court concludes that the ends of justice served by granting a continuance of the speedy trial deadlines outweigh

---

[1]See, e.g., defendant Bruce Furr's Motion to Dismiss the Superseding Indictment for Fifth Amendment Due Process Violations (Docket #254); Motions for Bills of Particulars (Docket ##253, 262); defendant Steven Furr's Motion to Sever Defendant (Docket #258).  Defendant Bruce Furr's Motion to Suppress any Evidence Seized from His Office on May 16, 2005 (Docket #261).  Defendants' Joint Motion for a Bill of Particulars Regarding Forfeiture Allegations

the best interests of the public and defendants Bruce and Steven Furr in a speedy trial. This finding is made pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (B). Therefore, defendants Bruce and Steven Furrs' motion to set a speedy trial for February 2009 will be denied.

## MOTION TO CHANGE VENUE
(Docket #255)

Eight of the eleven defendants – Steven Furr, Lance Furr, Bruce Furr, David Howard, James Currey, Thomas Balsiger, William Babler, and Howard McKay [defendants] – filed a motion to transfer these proceedings to the United States District Court for the Western District of Texas, El Paso Division, for the convenience of the parties and witnesses and in the interest of justice pursuant to Fed. R. Crim. P. 21(b). (Docket #255). The defendants assert that an analysis of the ten factors articulated by the Supreme Court in Platt v. Minnesota Mining and Manufacturing Co., 376 U.S. 240, 243-44 (1964), makes clear that all relevant considerations indicate that the Eastern District of Wisconsin is neither an appropriate nor a convenient venue for a trial in this case.

The government responds that the defendants have not met their burden to show that a transfer of venue would serve the purposes set forth in Fed. R. Crim. P. 21(b) and that none of the relevant Platt factors weigh in favor of a transfer. The government concludes that the interests of justice cannot be served by a transfer of venue to El Paso and they request that the court deny the defendants' motion.

The government and these defendants agree that courts rely on the ten-factor test set forth in Platt when considering whether to grant or deny a motion to transfer venue under Rule 21(b). However, these defendants and the government strenuously disagree

on the conclusions to be drawn from the application of the Platt factors to the facts of this case.

## ANALYSIS

Federal Rule of Criminal Procedure 21(b) provides as follows:

For Convenience. Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice.

The question of transfer of venue under Rule 21(b) is one that involves a "realistic approach, fair consideration and judgment of sound discretion on the part of the district court." United States v. Zylstra, 713 F.2d 1332, 1336 (7th Cir.1983) (quoting United States v. Phillips, 433 F.2d 1364, 1368 [8th Cir. 1970]). The defendant is not required to show truly compelling circumstances for a change of venue, but rather "[i]t is enough if, all relevant things considered, the case would be better off transferred to another district." Matter of Balsimo, 68 F.3d 185, 187 (7th Cir. 1995). The burden is on the moving defendants to show why a transfer would serve the purposes specified in the rule. See In Re United States, 273 F.3d 380, 388 (3rd Cir. 2001); Charles Alan Wright, Federal Practice and Procedure: Criminal 2nd § 344 at 266-27 (2d ed. 1992). Whether to transfer a case under Rule 12 is a decision left to the court's discretion. Morrison, 946 F.2d at 489.

In Platt, 376 U.S. at 243-44, the Court set forth the factors to be considered in evaluating whether transfer of venue "in the interest of justice" under Rule 21(b) is proper. These factors are: 1) location of the defendant; 2) location of possible witnesses; 3) location of events likely to be in issue; 4) location of documents and records likely to be involved; 5) disruption of defendant's business unless the case is transferred; 6) expense to the parties; 7) location of counsel; 8) relative accessibility of place of trial; 9) docket

conditions of each district or division involved; and 10) any other special elements which might affect the transfer. Id.  "No one of these considerations is dispositive . . .. 'It remains for the district court to try to strike a balance and determine which factors are of greatest importance.'" United States v. Radley, 558 F. Supp. 2d 865, 877 (N.D. Ill. 2008) (quoting Morrison, 946 F.2d at 489 n.1 [citations omitted]).

Location of Defendants: The defendants assert that the first and most important factor to consider is the location of the defendants.  They assert that none of the defendants reside in or around the Eastern District of Wisconsin. In addition, they assert that the headquarters of the company which employs five of the defendants is located in El Paso.

The government states, at the outset, that a defendant does not have a constitutional right to be tried in his home district.  The government points out that only four of the defendants seeking a change of venue reside in Western District of Texas with the remaining four defendants residing in Indiana and Illinois.  The government maintains that transfer of the trial to El Paso would be convenient for a few defendants and inconvenient for the remaining defendants.  In addition, the government states that the defendants will not be able to attend to their daily responsibilities and daily routines while they are in trial.

The court finds that the location of the defendants does not support transfer of the trial to the Western District of Texas for a number of reasons.  First, the defendants "have no constitutional right to have a trial in their home districts, nor does the location of the [defendant's] home have 'independent significance in determining whether transfer to that district would be in the interest of justice.'" Zylstra, 713 F.2d at 1336 (7th Cir. 1983) (quoting United States v. McManus, 535 F.2d 460, 463 [8th Cir. 1976] [quoting Platt, 376 U.S. at

245-46]).  Rather, residence is "a factor to be considered, but not the controlling factor. . .." United States v. Bein, 539 F. Supp. 72, 74 (N.D. Ill. 1982) (quoting Jones v. Gasch, 404 F.2d 1231, 1240 [D.C. Cir. 1967]).

Second, only four of the eight moving defendants live in the Western District of Texas – defendants Balsiger, Currey, Steven Furr, and Howard[2] – and of the remaining moving defendants, three reside in Bloomington, Indiana (Bruce Furr, Lance Furr and William Babler) and one defendant (Howard McKay) lives in Kankakee, Illinois.  See Joint Motion by Defendants Steven Furr, Lance Furr, Bruce Furr, David Howard, James Currey, Thomas Balsinger, William Babler and Howard McKay for and Memorandum in Support of a Transfer of Venue [Defendants' Joint Motion – Transfer of Venue] at 5).  Defendant McKay has no family or other ties to the Western District of Texas.

Of the non-moving defendants, Ovidio Enriquez lives in El Paso,[3] Daxesh Patel resides in Somerset, New Jersey and Bharatkumar Patel also resides in New Jersey.  Id. While a transfer of venue might be convenient to some of the parties, it would not necessarily be more convenient for all.

Third, three of the defendants have not moved for a transfer of venue – one has entered a guilty plea and the other two reside in New Jersey, which is geographically closer to the Eastern District of Wisconsin than to the Western District of Texas.  Rule 21(b) of the Federal Rules of Criminal Procedure provides that the court may transfer the proceeding

---

[2] Defendant David Howard entered a guilty plea to Count 27 of the superseding indictment on May 15, 2009, and is awaiting sentencing set for January 2010.

[3] Defendants Ovidio Enriquez pled guilty  to Count 27 of the superseding indictment on May 15, 2009.  He is awaiting sentencing in January 2010.

to another district "[u]pon the defendant's motion." Therefore, the case as to the remaining, non-moving defendants would remain in the Eastern District of Wisconsin.

The court notes that the government argues that regardless of the venue, the defendants will not be able to attend to their daily responsibilities and daily routines, citing United States v. Wilson, No. 01-Cr - 53, 2001 WL 798018, at *3 (S.D. N.Y. July 13, 2001) ("Every life is significantly disrupted during a trial wherever it is held. Besides the need to be in court every day, the evenings and weekends are usually consumed analyzing the evidence that has been admitted and preparing for the remainder of the trial.").

In response, the defendants assert that "nights and weekends spent near their homes, families and businesses would undoubtedly 'make a substantial difference.'" (Named Defendants Reply Brief in Support of Joint Motion for a Transfer of Venue [Defendants' Reply Brief -- Transfer of Venue] at 4) (quoting United States v. Aronoff, 463 F.Supp. 454 [1978]). While the defendants' response may have some merit, their reliance on Aronoff is misplaced. The quote in Aronoff actually states that "[t]o a *failing* business that depends so much on personal involvement, even a few hours each weekday plus weekends could make a substantial difference." Aronoff, 463 F.Supp. at 459 (emphasis added). The defendants do not indicate that their businesses are failing and require the attention that was needed by the defendant in Aronoff. Accordingly, upon due consideration, the court concludes that the location of the defendants does not support transfer of venue to the Western District of Texas.

Location of Possible Witnesses. The witnesses anticipated to be called by the parties reside in various cities and states throughout the United States. The defendants assert that none of the key witnesses reside in the Eastern District of Wisconsin. They also

maintain that many of the key witnesses expected to be called to testify at trial reside in El Paso, Texas, although a number of these witnesses are cooperating witnesses who are more likely to be called to testify by the United States at government expense.[4] The defendants state that the five defendants who reside in the Western District of Texas will have local character witnesses testify on their behalf and that their ability to call these witnesses "would be greatly hampered" if the trial was held in Milwaukee. (Defendants' Joint Motion - Transfer of Venue at 9).

The government asserts that it anticipates calling several key fact witnesses who reside in Bloomington, Indiana, as well as multiple witnesses from the States of New York, New Jersey, Minnesota, Illinois, and Missouri. It asserts that travel from these witnesses' residences to Milwaukee will be more convenient than travel to El Paso. In addition, as the defendants point out, some of the key witnesses whom the government will call to testify reside in El Paso and will be testifying at the government's expense.

The government also challenges the defendants' assertion that none of the key witnesses reside in the Eastern District of Wisconsin. The government states that, in addition to other witnesses, it anticipates calling representatives from the corporations in Wisconsin that allegedly were victimized by the defendants' alleged fraud – Kimberly-Clark, LeSaffre Yeast Co., S.C. Johnson & Sons, Sargento Foods and Piggly Wiggly Midwest,[5]

---

[4] Of the seven key fact witnesses identified by the defendants, the government disputes the characterization of one witness, Jay J. Armes, as a key witness. As to the others, the government states that they are cooperating witnesses or citizen witnesses who will be called to testify by the government at its expense.

[5] According to the government, on January 4, 2009, Fresh Brands/Piggly Wiggly changed its corporate name to Piggly Wiggly Midwest.

as well as law enforcement agents based in Milwaukee who have been involved in the investigation.

In addition, in order to exercise sound discretion in deciding a motion to transfer venue under Rule 21(b), the motion "must identify inconvenienced witnesses whom defendants propose to call and contain a 'showing' of the proposed witnesses' testimony." United States v. Haley 504 F.Supp 1124, 1126 (E.D. Pa. 1981) (citing United States v. Kelly, 467 F.2d 262, 265 [7th Cir. 1972] and Jones v. Gasch, 404 F.2d 1231, 1243 [D.C. Cir. 1967]). In Kelly, 467 F.2d at 265, the court upheld the trial court's denial of the defendant's motion to transfer, citing Lindberg v. United States, 363 F.2d 438, 439 (9th Cir. 1966). The court in Lindberg, had denied the defendant's motion to transfer, even though the defendant had asserted that his witnesses were located in the district to which transfer was sought. In so doing, the court observed that "the witnesses were not named or otherwise described and the nature of their expected testimony was not disclosed." Lindberg, 363 F.2d at 439.

Here, the defendants have not identified any witnesses who would not be able to testify on their behalf if the trial were to be held in the Eastern District of Wisconsin as opposed to the Western District of Texas. Moreover, the Eastern District of Wisconsin will be more convenient to many witnesses who are anticipated to testify at trial. Therefore, this factor does not support the transfer of this case to the Western District of Texas.

Location of Events Likely to Be in Issue. The defendants assert that the government's case centers around alleged acts that primarily occurred in El Paso, Texas and New Mexico, and to a lesser extent in Indiana and New Jersey. Thus, the defendants argue that the "center of gravity" of the case is El Paso since the government allegations

of "coupon diversion, charge-backs, fraudulent coupon submission, misrepresentations to customers and other parts of the alleged scheme were all directed and accomplished from El Paso." (Defendants' Reply Brief – Change of Venue at 6).

The government agrees that a substantial number of events giving rise to the charges occurred in El Paso, but it also asserts that an equal number of events occurred in other places such as Indiana and the Eastern District of Wisconsin. The government further asserts that Count 27 of the superseding indictment, which charges a conspiracy to obstruct justice, alleges numerous overt acts in furtherance of the conspiracy. Many of these alleged acts "involve the defendants knowingly providing, or causing others to provide, information to federal law enforcement conducting a grand jury investigation in the Eastern District of Wisconsin and a United States district court sitting in the Eastern District of Wisconsin." (Government's Response to the Defendants' Joint Motion to Change Venue [Government's Response – Motion to Change Venue] at 7-8). Therefore, this factor is neutral and does not support transfer.

Location of Documents and Records. The defendants maintain that the thousands of pages of documents at issue are mainly in electronic form and are easily transmittable to any court in this country. Therefore, they assert that the location of documents and records is irrelevant. The government points out, however, that more than ten tons of physical evidence obtained from locations throughout the United States are stored in boxes in a warehouse in Milwaukee and large volumes of records are housed in both the Federal Bureau of Investigation (FBI) office in Milwaukee and in the United States Attorney's Office. The defendants counter by asserting that the boxes in the warehouse mostly contain coupons and that the government transferred the boxes to Milwaukee from other locations,

including El Paso. Therefore, the defendants assert that the existence of documents in the Milwaukee warehouse should not affect the court's transfer analysis.

The defendants accurately point out that the documents in electronic format are easily transportable. However, the more than ten tons of physical evidence stored in boxes in a warehouse in Milwaukee are not. Under the circumstances, this factor weighs against the transfer of venue.

<u>Disruption of Defendants' Businesses</u>. The defendants maintain that a transfer of venue to El Paso would result in less disruption of their businesses. They state that seven of the defendants currently work in El Paso or have an available office there.[6] The defendants assert that if the trial were held in El Paso, they could more easily supervise their businesses during evening and weekends.

The government acknowledges that the defendants will experience some disruption to their businesses during trial. The government asserts that neither HighQ BPO nor Currey Adkins, owned by defendant Currey, are start up businesses. The government states that according to their websites, Currey Adkins "has engaged in business here and abroad since 1975, employs 130 employees and occupies a 35,000 square foot facility." (Government Response – Motion to Transfer Venue at 9). According to its website, HighQ BPO employs 500 people in North America and has operations in the United States and abroad. <u>Id.</u>

A trial generally impacts and disrupts a defendant's business to some extent, although a trial in El Paso may be less disruptive to some of the defendants. Only four of the eight moving defendants signed affidavits averring that an El Paso trial would better

---

[6] Defendants Bruce Furr and Lance Furr reside in Bloomington, Indiana, but they have access to an office in El Paso.

allow them to conduct their businesses. Although the defendants will not be able to conduct business as usual, with improved means of communication via cell phones, email, videoconferencing, and the like, the defendants can more readily remain involved in their businesses. See United States v. Bloom, 78 F.R.D. 591, 609-10 (E.D. Pa. 1977) ("In a criminal trial, where a defendant must be present every day in court, any location is bound to cause some significant interference with business.") Under the circumstances, this factor does not support transfer.

Expense to the Parties. The defendants state that a trial in Milwaukee would be "vastly more expensive" than a trial in El Paso for six of the eleven defendants. (Defendants Joint Motion – Transfer of Venue at 12-13). Although the defendants do not provide an estimate of their costs to defend the charges in Milwaukee, they claim that if the trial were held in El Paso, "many of the defendants would save thousands of dollars." (Defendants' Reply Brief – Transfer of Venue at 9). They also assert that travel and lodging expenses would be minimized for many of the defendants if the trial were held in the Western District of Texas.

The government acknowledges that a trial in the Eastern District of Wisconsin will be more costly for some defendants. The government maintains, however, that the defendants' bond studies demonstrate that they have resources far in excess of most defendants, with five of the eight moving defendants being multi-millionaires. (Government's Response – Transfer of Venue at 10). Further, six of the eight defendants have traveled abroad extensively for business and/or pleasure while the case has been pending, suggesting that the defendants' "ability and willingness to travel to events they deem important should extend to a trial on the charged offenses." Id.

"Travel and lodging expenses are an obvious factor to be considered . . . albeit not controlling unless unbearable." United States v. Benjamin, 623 F. Supp. 1204, 1214-15 (D.D.C. 1985) (citations omitted). While the moving defendants will endure travel and lodging costs, the defendants do no contend that such costs would be "unbearable" in any way. Moreover, travel costs for defendants residing in Illinois and Indiana would arguably be less if the trial were in Milwaukee.

In addition, transfer of the trial to El Paso for the seven defendants[7] who filed the transfer motion would result in a severance, necessitating two trials since Rule 21(b) only authorizes the court to transfer venue "[u]pon the defendant's motion." Fed. R. Crim. P. 21(b). Two trials would result in greater inconvenience to witnesses who will have to appear twice in two different locations and would result in significantly greater expense to the government. "Courts should be mindful of these difficulties as well as the actual expense and waste of court time in our severely burdened and overtaxed federal judicial system." Zylstra, 713 F.2d at 1336. On balance, this factor does not favor transfer.

Location of Counsel. Of the seven remaining moving defendants,[8] counsel for two of the defendants practice in El Paso, Texas and counsel for the other defendants practice in Chicago, Illinois or Indianapolis, Indiana. Counsel for the Patel defendants practice in New Jersey and Milwaukee. For the government, the four Assistant United States Attorneys who will prosecute the case are based in Milwaukee, Wisconsin. Since the

---

[7] Defendant David Howard, who pled guilty to Count 27 of the superseding indictment on May 15, 2009, now has new court-appointed counsel.

[8] Defendant David Howard, who has entered a guilty pleas, has new court-appointed counsel.

majority of the attorneys involved in this litigation either practice in Milwaukee or are closer to Milwaukee than to El Paso, this factor does not favor transfer.

<u>Relative Accessibility of Place of Trial</u>.

The defendants assert that Milwaukee and El Paso are equally-sized metropolises with sufficient transportation and accommodations options. The government disagrees, maintaining Milwaukee is more accessible to the defendants who reside in Illinois, Indiana and New Jersey, as well as to Chicago counsel. Given today's transportation options, it appears that both districts are accessible to the parties and counsel. Therefore, the court finds that this factor is neutral.

<u>Docket Conditions of Each District Involved</u>. In light of the Speedy Trial Act, 18 U.S.C. § 3161 et seq, "this factor does not influence the determination of transfer." <u>United States v. Berry</u>, No. 84-CR 529,1985 WL 1587, at *9 (N.D. Ill. May 10, 1985). Nevertheless, as the government notes, both the Eastern District of Wisconsin and the El Paso Division of the Western District of Texas have four district court judges and three magistrate judges.[9] However, during 2007, the number of criminal case filings in the two districts were vastly different:  3,101 criminal case filings in the Western District of Texas, El Paso Division versus 338 criminal case filings in the Eastern District of Wisconsin. (Affidavit of Kelly B. Watzka ¶ 9 and Exh. F at 1 attached to the Government's Response - Motion to Transfer). This factor does not support transfer of venue to the Western District of Texas, El Paso Division.

---

[9] The Eastern District of Wisconsin actually has five district judges, including William C. Griesbach who is assigned to the Green Bay Division.

<u>Other Special Elements That Might Affect Transfer</u>

This action has been pending in the Eastern District of Wisconsin in this district since March 2007. Both United States District Judge Charles N. Clevert and this magistrate judge are very familiar with this multi-defendant complex fraud case and have unique knowledge of the case given their involvement in the litigation for the past two years. A number of scheduling conferences have been held and numerous motions have been filed by the defendants. Many of the motions have been addressed. The defendants have asserted privilege for literally hundreds of documents. These privilege claims are under review, but have not yet been resolved. To transfer this case at this time would result in additional time necessary for another judge to become as knowledgeable about the case and, as already noted, would necessitate multiple trials. Given limited judicial resources, a transfer of this case certainly would not serve the interests of justice.

In sum, upon due consideration of the relevant factors and in the exercise of its discretion, this court concludes that the eight defendants who filed the motion to transfer have not shown that the convenience of the parties and witnesses and the interests of justice require transfer of their case to the Western District of Texas. Thus, the defendants have not demonstrated that, "all relevant things considered, the case would be better off transferred to another district." <u>Balsimo</u>, 68 F.3d at 189. Accordingly, the motion to transfer venue filed by these defendants will be denied.

## **CONCLUSION**

**NOW, THEREFORE, IT IS ORDERED** that defendant Steven A. Furr's motion for a bill of particulars be and hereby is **denied**. (Docket #253).

**IT IS ALSO ORDERED** that defendant Bruce A. Furr's motion for a bill of particulars be and hereby is **denied**.  (Docket #262).

**IT IS FURTHER ORDERED** that defendants Bruce A. Furr and Steven A. Furr's motion for a bill of particulars regarding forfeiture allegations be and hereby is **denied**. (Docket #257).

**IT IS FURTHER ORDERED** that defendants Bruce A. Furr and Steven A. Furr's motion to sever defendants be and hereby is **denied**.  (Docket #258).

**IT IS ALSO ORDERED** that defendants Bruce A. Furr and Steven A. Furr's motion for a speedy trial be and hereby is denied. (Docket #230).

**IT IS ALSO ORDERED** that defendants' motion to transfer proceedings for the convenience of the defendants to the Western District of Texas, El Paso Division, pursuant to Fed. R. Crim. P. 21(b) be and hereby is **denied**.  (Docket #255).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General L. R. 72.3 (E.D. Wis.), whereby written objection to any order herein or part thereof may be filed within ten days of service of this order.  Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 16th day of June 2009.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge