# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff.

      v.

THOMAS C. BALSIGER,
BRUCE A. FURR,
STEVEN A. FURR,
LANCE A. FURR,                           Case No. 07-Cr-57
WILLIAM L. BABLER,
OVIDIO H. ENRIQUEZ,
DAVID J. HOWARD,
JAMES C. CURREY,
HOWARD R. MCKAY,
DAXESH V. PATEL and
BHARATKUMAR K. PATEL,

      Defendants.

## DECISION AND ORDER

On March 6, 2007, a federal grand jury in this district returned a 25-count indictment against International Outsourcing Services, LLC (IOS), and eleven individual defendants charging them with wire fraud in violation of 18 U.S.C. §§ 1343 and 2. On December 5, 2007, a 27-count superseding indictment against the eleven individual defendants only was returned by the federal grand jury. IOS was not charged in the superseding indictment.

Two new counts were added to the superseding indictment, Counts 26 and 27. Count 26 charges all defendants with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. Count 27 charges seven defendants – Thomas C. Balsiger, Bruce A. Furr, Lance A. Furr, William L. Babler, Ovidio H. Enriquez, David J. Howard and James C.

Currey – with conspiracy to obstruct justice in violation of 18 U.S.C. §§ 371 and 2. Both the initial indictment and the superseding indictment contain forfeiture provisions.

Currently pending before the court are defendants Thomas C. Balsiger, James Currey, Bruce Furr, Lance Furr, and Steven Furr's claims of privilege. The court previously entered an order addressing the adequacy of the defendants' logs. (See March 15, 2010, Decision and Order). After concluding that the logs were inadequate, the court ordered the defendants to submit updated and amended privilege logs.

Defendants Bruce Furr, Lance Furr, and Steven Furr (Furr Defendants) submitted five updated and amended privilege logs and one additional log:

> (1) "Furr Defendants UPDATED Privilege Log Re: Greenberg Traurig Provided to Government April 15, 2010 (Rev. 12/2/08)";

> (2) "Joint Defense Privilege Log for Steven Furr; Scott, Hulse, Marshall, Feuille, Finger & Thurmond P.C. Hard Copy Documents";

> (3) "Lance Furr Privilege Log Re: Documents Possessed by Scott, Hulse April 15, 2010 (Rev. December 2, 2008; Original, June 15, 2007)";

> (4) "Furr – Revised Scott Hulse Electronic Docs Privilege Log – April 15, 2010";

> (5) "Furr Supplemental Privilege Log;" and

> (6) "Furrs' Narrowed and Resubmitted Privilege Claims for Documents from Certain Balsiger and Currey Privilege Logs."

Defendants Thomas C. Balsiger and James Currey submitted fifteen updated and amended privilege logs:

> (1) Privilege Docs at Scott Hulse;

> (2) Scott Hulse Privilege Emails;

> (3) IOS -DBER Case Related Email Privilege Log;

2

(4) Scott Hulse Case Related Email;

(5) IOS Case Master Database;

(6) IOS Working Files from Local Hard DriveS;

(7) IOS PC Docs Open Case Related Documents as of 5-8-07;

(8)  GT (Greenberg Traurig) Privileged Documents;

(9) Greenberg Traurig at United States Attorney's Office in Milwaukee, WI;

(10) Abigail Clapp Privilege Email;

(11) Bevin Brennan Privilege Email;

(12) Privilege Log Regarding Bill Clark Materials;

(13) IOS GT Email #1 – Jim Richmond Email Privilege Log;

(14) IOS GT Email #1 – Kevin Finger Segregated Privilege Email;

(15) IOS GT Email #1 –  Kevin Finger Production Email Privileged Log.[1]

## APPLICABLE LAW

### General Privilege Law

 "[T]he party seeking to establish the privilege bears the burden of demonstrating that all of the requirements for invoking the . . . privilege have been met."  In re Grand Jury Proceedings, 220 F.3d 568, 571 (7th Cir. Ill. 2000).   Because a privilege is "in derogation of the search for the truth, the privilege must not be lightly created nor expansively construed."  In Re Walsh, 623 F.2d 489, 493 (7th CIr, 1980) (citing United States v. Nixon, 410 U.S. 1, 9-10 [1973]).   Privileges must be asserted on a document-by-document basis.  United States v. First State Bank, 691 F.2d 332, 335 (7th Cir. 1982).  As "the inquiry into

---

[1]The privilege claims of defendants Balsiger and Currey contained in "IOS GT Email #2 Privilege Log" are not privileged as stated in the court's decision and order of March 15, 2010.  (Docket # 379).

3

whether documents are subject to a privilege is a highly fact-specific one, a blanket privilege claim is not allowed." In re Grand Jury Proceedings, 220 F.3d at 571; Holifield v. United States, 909 F.2d 201, 204 (7th Cir. 1990). Thus, the claim of privilege "must be made on a question-by-question or document-by-document basis." United States v. White, 950 F.2d 426, 430 (7th Cir. 1991) (citation omitted).

To allow for the evaluation of a given privilege claim, an individual submitting a privilege log must "at least identify the general nature of [the] document, the specific privilege he is claiming for that document, and facts which establish all the elements of the privilege which he is claiming." Id. "'Only when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies.'" In re Grand Jury Proceedings, 220 F.3d at 571 (quoting Holifield, 909 F.2d at 204).

Although addressing Fed. R. Civ. P. Rule 26(b)(5), the following is helpful in determining what information is necessary for the evaluation of privilege claim:

> To properly demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document . . .. The summary should be specific enough to permit the court or opposing counsel to determine whether the privilege asserted applies to that document.

Smith v. Dow Chem. Co., 173 F.R.D. 54, 58 (W.D. N.Y. 1997) (internal citations omitted).

## Attorney-Client Privilege

Federal law has recognized the attorney-client privilege as "the oldest privilege for

4

confidential communication known to common law." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of the law and administration of justice." <u>Id.</u>

"Except when state law supplies the applicable rule of law, the attorney-client privilege is 'governed by the principles of the common law as [it] may be interpreted by the courts of the United States in the light of reason and experience.'" <u>United States v. BDO Seidman, LLP</u>, 492 F.3d 806, 814 (7th Cir. 2007) (quoting Fed. R. Evid. 501). The court of appeals for this circuit had adopted the general principles of the attorney-client privilege as outlined by Dean Wigmore. The essential general principles governing the privilege are as follows:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the privilege may be waived.

<u>United States v. Evans</u>, 113 F.3d 1457, 1461 (7th Cir. 1997) (quoting John Henry Wigmore, Evidence in Trials at Common Law § 2292 [John T. McNaughton rev. 1961]).

Thus, the attorney-client privilege attaches to a communication made: "(1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship." <u>BDO Seidman</u>, 492 F.3d at 815. When statements are made from a client to an attorney in the presence of a third person who is not an agent of either the client or the attorney, in most cases, the privilege is defeated. <u>Evans</u>, 113 F.3d at 1462.

5

## Joint Defense/Common Interest Rule

"The joint defense privilege, more properly defined as the 'common interest rule,' has been described as 'an extension of the attorney client privilege.'" Evans, 113 F.3d at 1467 (quoting Walker v. Financial Corp. of Am., 828 F.2d 579, 583 n. 7 [9th Cir. 1987]). The common interest privilege is "an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." BDO Seidman, 492 F.3d at 815. It only applies "where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is strictly limited to those communications made to further an ongoing enterprise." Id.

In light of the inherent tension between the beneficial purposes of the attorney-client privilege and the right of the court to every person's evidence, "courts have articulated the following principles to inform [the courts'] analysis of the scope of the common interest doctrine:

> (1) '[C]ourts construe the privilege to apply only where necessary to achieve its purpose.' *[United States v. BDO Seidman, 337 F.3d 802, 811 (7th Cir. 2003)].*

> (2) Only those communications which 'reflect the lawyer's thinking [or] are made for the purpose of eliciting the lawyer's professional advice or other legal assistance' fall within the privilege. *[United States v. Frederick, 182 F.3d 496, 500 (7th Cir. 1999)].*

> (3) Because one of the objectives of the privilege is assisting clients in conforming their conduct to the law, litigation need not be pending for the communication to be made in connection to the provision of legal services. See *United States v. Schwimmer, 892 F.2d 237, 243-44 (2d Cir. 1989).*

> (4) Because 'the privilege is in derogation of the search for truth,' any exceptions to the requirements of the attorney-client privilege 'must be strictly confined.' *In re Grand Jury Proceedings (Thullen), 220 F.3d 568, 571 (7th Cir. 2000).*

BDO Seidman, 492 F.3d at 815.

While the doctrine is intended to apply to defendants who share a common legal purpose, it is not necessary that the defendants share every common purpose. United States v. McPartlin, 595 F.2d 1321, 1336 (7th Cir. 1979). It is sufficient if the co-defendants join forces for a single purpose relating to a common effort. In McPartlin, co-defendants Frederick Ingram and Robert McPartlin, who were convicted of conspiracy, joined forces to discredit the testimony of William Benton, an unindicted witness who played a major role in that conspiracy. The court, referencing the Advisory Committee Notes to proposed Federal Rule of Evidence 503(b)(3), determined that "[c]ooperation between defendants in such circumstances is often not only in their own best interests but serves to expedite the trial or, as in the case at bar, the trial preparation." Id. at 1337. Thus, the court concluded that when an attorney best serves his client by joining forces with a co-defendant for a limited purpose, the attorney becomes the co-defendant's attorney for the extent of that limited purpose and any communications in furtherance of that purpose are privileged.

Moreover, the common interest shared by the parties need not be in anticipation of litigation. BDO Seidman, 492 F.3d at 815. It merely has to be a common legal interest. In BDO Seidman, Michael Kerekes, a lawyer and partner at BDO, wrote a memorandum (Kerekes Memorandum) to BDO's outside counsel, David Dreier, an attorney at White & Case, LLP, requesting legal advice about a pending IRS regulation. Id. at 813. Donna Guerin, an attorney at Jenkens & Gilchrist, received a copy of the memorandum from BDO soliciting input for an opinion letter that Jenkens & Gilchrist was preparing for both BDO and their common clients. At the time Ms. Guerin received the memorandum, Jenkens &

7

Gilchrist did not represent BDO; however Jenkens & Gilchrist serviced jointly with BDO clients on the same matters. The court concluded that "BDO and Jenkens & Gilchrist, acting as joint venturers, shared a common legal interest 'in ensuring compliance with the new regulation issued by the IRS,' and in making sure that they could defend their product against potential IRS enforcement actions." Id. at 816. As a result of this common legal interest, the court upheld the district court's finding that the Kerekes Memo was protected from disclosure by the common interest privilege.

### IOS Waiver of Attorney-Client Privilege

The court also addressed the issue of waiver of the common interest privilege as a result of Jenkins & Gilchrist's voluntary disclosure of the Kerekes Memorandum to the opposing party in response to a subpoena. More specifically, the court held that "because the privileged status of communications falling within the common interest doctrine cannot be waived without the consent of all of the parties, Jenkens & Gilchrist's subsequent voluntary disclosure of the Kerekes Memorandum in response to the IRS' subpoena did not waive BDO's claim of privilege." Id. at 817.

The issue of waiver of the common interest privilege is particularly important in this case, as IOS has agreed to waive all of its potential claims of common interest privilege, as well as its claims of attorney-client and work product privilege. Given the importance of this waiver issue, the court will examine in more detail the facts of BDO Seidman, as well as the authority cited by the court in support of its conclusion regarding waiver.

The facts in BDO Seidman show that the Kerekes Memorandum was authored by a lawyer and partner at BDO. Id. at 813. The memorandum was subsequently transmitted to an attorney at Jenkens & Gilchrist by Robert Greisman, another partner at BDO. Id. at

8

816. Jenkens & Gilchrist then voluntarily disclosed the memorandum to the opposing party – the IRS – in response to a subpoena. Id. at 817. The court held that regardless of this disclosure, BDO was still entitled to claim the common interest privilege over its memorandum. Id. The key phrase in the court's holding on this matter – at least as far as the current case is concerned – is the statement that "the privileged status of communications falling within the common interest doctrine cannot be waived without the consent of all the parties." Id. To better understand how this phrase is to be interpreted, it is necessary to explore the authorities relied upon by the court in making this holding.

The first such authority was John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers, 913 F.2d 544, 555 (8th Cir. 1990), in which the court considered whether a document created by the Morrell company, known as the Gass Memorandum, was protected by the joint defense privilege. This issue arose after a group of Morrell employees brought a class action lawsuit against both Morrell and the United Food and Commercial Workers International Union (International Union). The employee class ultimately settled with Morrell and entered into a joint defense agreement with the company. Pursuant to this agreement, Morrell gave the employee class access to a group of documents, which included the Gass Memorandum, for use in its case against the International Union. Id. The employee class ultimately allowed the International Union to gain access to the Gass Memorandum when the employee class' expert witness turned it over following his deposition.

In considering whether this disclosure amounted to a waiver of privilege over the Gass Memorandum by Morrell, the court held that "[i]t is fundamental that 'the joint defense privilege cannot be waived without the consent of all parties to the defense.' Thus, neither

9

the [employee class] nor its counsel could waive the privilege on Morrell's behalf, and there is no evidence that Morrell itself waived the privilege." Id. at 556 (quoting Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 90 F.R.D. 21, 29 [N.D. Ill. 1980]). Accordingly, the court held that Morell could still assert the common interest privilege over the Gass Memorandum. John Morrell, 913 F.2d at 556.

The court notes that the facts of both BDO Seidman and John Morrell are distinguishable from those in this case. In both those cases, the court faced a situation where the recipient of a communication attempted to waive the common interest privilege over the communication, while the actual communicator attempted to prevent its disclosure. In this case, however, the actual communicator – IOS – is attempting to waive the common interest privilege as to its own communications. To analogize, this is the equivalent of BDO or the Morrell company attempting to waive the common interest privilege over the Kerekes and Gass Memoranda, respectively. Because the court in those cases confronted a factually distinguishable situation, both BDO Seidman and John Morrell can be read to hold only that the party to whom a communication was made cannot waive the common interest privilege belonging to the party who actually made the communication. Indeed, neither court held that the party making the communication could not waive the common interest privilege over its own communications of the memoranda at issue.

With regard to the John Morrell case, a subsequent case from the Court of Appeals for the Eighth Circuit supports this conclusion. In In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 922 (8th Cir. 1997), the court considered whether the common interest privilege applied to one of the parties' communications. In doing so the court

10

quoted the following from the Restatement of the Law Governing Lawyers:

> If two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies a privileged . . . that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.

Id. (quoting Restatement [Third] of the Law Governing Lawyers § 126(1) [Proposed Final Draft No. 1, 1996]). Thus, according to the Restatement, a client making a communication may in fact waive the common interest privilege as to that communication, preventing any other party with a common interest from asserting privilege over the communication. Given that this statement of the common interest privilege was cited positively by the Court of Appeals for the Eight Circuit, it appears that had it been so inclined, the Morell company may have been allowed to waive its common interest privilege over the Gass Memorandum, regardless of any other joint defense member's objections.

The second authority cited by the court in BDO Seidman is In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129, 902 F.2d 244 (4th Cir. 1990), in which the court examined whether the joint defense privilege applied to a number of documents that had been transferred between a corporation and its subsidiary. This issue arose after the subsidiary became an independent corporation and agreed to waive its privileges over a group of documents related to a lawsuit concerning the two companies' performance of a government contract. The court noted that the joint defense privilege is "[a]n exception to the general rule that disclosure to a third party of privileged information thereby waives the privilege," and stated that "a joint defense privilege cannot be waived without the consent of all parties who share the privilege." Id. at 248 (citing Chahoon v. Commonwealth, 62 Va.

11

822, 842 [1871]).  Accordingly, the court found that all documents related to the government contract lawsuit were "subject to a joint defense privilege that Subsidiary [could] not waive unilaterally."  Grand Jury Subpoenas, 902 F.2d at 250.

The facts in In re Grand Jury Subpoenas (89-3 and 89-4) indicate that the court held that neither the parent company nor its subsidiary could unilaterally waive the common interest privilege, even as to its own communications.  In other words, the court apparently held that the parent company was entitled to assert the common interest privilege even over communications made by its subsidiary, essentially overriding the subsidiary's waiver of all privilege claims.  This holding seems to extend further than the holdings in both BDO Seidman and John Morrell.

The final authority cited by the court in BDO Seidman is the Advisory Committee's Notes to proposed Federal Rule of Evidence 503(b).  These notes properly identify the common interest privilege as an extension of (or an exception to) the attorney-client privilege, and describe the privilege as applicable to a situation "where different lawyers represent clients who have some interest in common."  Advisory Committee's Note, Proposed Fed. R. Evid. 503(b), 56 F.R.D. 183, 239 (1972).  The notes also point out that this situation typically arises when clients have "actually or potentially conflicting interests in addition to the common interest which brings them together."  Id.  The Advisory Committee Note goes on to state the following:

> The needs of these cases seem better to be met by allowing each client a privilege as to his own statements.  Thus if all resist disclosure, none will occur.  But, if for reasons of his own, a client wishes to disclose his own statements made at [a] joint conference, he should be permitted to do so, and the rule is to that effect.

12

Id.[2]

Thus, it appears that the authorities cited by the court in <u>BDO Seidman</u> are inconsistent as to whether a party may waive the common interest privilege as to its own communications. Both <u>John Morrell</u> and the Advisory Committee's Notes indicate that a party may do so regardless of another joint defense member's objections, while the court in <u>In re Grand Jury Subpoenas (89-3 and 89-4)</u> apparently held that any joint defense member can preclude disclosure regardless of another member's waiver. Although the court in <u>BDO Seidman</u> stated that "the privileged status of communications falling within the common interest doctrine cannot be waived without the consent of all the parties," 492 F.3d at 817, given that <u>BDO Seidman</u> is factually distinguishable from the present case it is unclear precisely what impact this statement should have on the court's consideration of whether IOS is free to reveal its own joint defense communications pursuant to its waiver of the common interest, attorney-client, and work product privileges.

Given the apparent lack of clarity on this issue, it is helpful to examine how other courts have handled the question of whether a party may reveal its own joint defense communications. In <u>In re Grand Jury Subpoena (Newparent)</u>, 274 F.3d 563, 572-73 (1st

_____

[2] It is worth noting that in at least one previous case the court of appeals for this circuit has indicated that these notes are "a useful guide" when deciding issues of privilege, stating the following:

> Although the Congress, in its revision of the Federal Rules of Evidence, deleted the detailed privilege rules and left the subject of privilege in federal question cases to "be governed by the principles of common law as they may be interpreted by the courts of the United States," the recommendations of the Advisory Committee, approved by the Supreme Court, are a useful guide to the federal courts in their development of a common law of evidence.

<u>United States v. McPartlin</u>, 595 F.2d 1321, 1336-1337 (7th Cir. 1979) (quoting Fed. R. Evid. 501) (discussing Advisory Committee's Note to proposed Rule 503[b]). Indeed, the fact that the court in <u>BDO Seidman</u> cited the exact same Advisory Committee Note as that referenced by the court in <u>McPartlin</u> reinforces the Notes' usefulness when confronting privilege issues.

Cir. 2001), the court stated the following:

> Even when [the common interest] rule applies . . . a party always remains free to disclose his own communications.  See In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 922 (8th Cir. 1997).  Thus, the existence of a joint defense agreement does not increase the number of parties whose consent is needed to waive the attorney-client privilege; it merely prevents disclosure of a communication made in the course of preparing a joint defense by the third party to whom it was made.

Although this statement was not made in the context of a criminal prosecution, it appears that in the Court of Appeals for the First Circuit a joint defense agreement does not prevent a party to the agreement from waiving the common interest privilege and revealing its own communications.

The Court of Appeals for the Eleventh Circuit has taken a similar approach, even in criminal cases.  In United States v. Almeida, 341 F.3d 1318, 1326 (11th Cir. 2003) (footnote omitted), the court stated the following:

> We hold that when each party to a joint defense agreement is represented by his own attorney, and when communications by one co-defendant are made to the attorneys of other co-defendants, such communications do not get the benefit of the attorney-client privilege in the event that the co-defendant decides to testify on behalf of the government in exchange for a reduced sentence.

Thus, the court effectively held that a cooperating witness may waive the common interest privilege as to his own communications by testifying on behalf of the government.

A third case, United States v. Agnello, 135 F. Supp. 2d 380, 383 (E.D.N.Y. 2001), also addressed waiver of the common interest privilege in the criminal context.  The court in that case held the following:

> A client who is part of a joint defense arrangement is entitled to waive the privilege for his own statements, and his co-defendants cannot preclude him from doing so . . ..  All that [his co-defendants] would be entitled to do, to the extent that a joint defense privilege did attach to the conversations, is stop

14

[the waiving member] from directly or indirectly revealing the privileged communications of other participants.

Id. (citing 2 C. Mueller & L. Kirkpatrick, Federal Evidence § 188 at 333-34 [2d ed. 1994]) (other citation omitted). Thus, the court also held that a client is always free to reveal his or her own communications, including those that would otherwise be privileged under the common interest doctrine.

A final consideration in interpreting the court's holding in BDO Seidman is the public policy behind the common interest privilege. The court in BDO Seidman described this public policy as follows:

> Applying the common interest doctrine . . . encourages parties with a shared legal interest to seek legal "assistance in order to meet legal requirements and to plan their conduct" accordingly. See In re Regents of the Univ. of California, 101 F.3d 1386, 1390-91 (Fed. Cir. 1996). This planning serves the public interest by advancing compliance with the law, "facilitating the administration of justice" and averting litigation. Id. at 1391. Reason and experience demonstrate that joint venturers, no less than individuals, benefit from planning their activities based on sound legal advice predicated upon open communication.

Thus, the effect of one party's waiver of the common interest privilege should be interpreted to reflect this public policy and to preserve it as much as possible.

After considering the authorities establishing the common interest doctrine both in this and other circuits and the public policy supporting it, the court finds that IOS is entitled to waive the common interest privilege as to its own communications. The court also finds, however, that IOS may not waive the common interest privilege as to any of its own communications that reveal, either directly or indirectly, the confidential, privileged communications of any non-waiving member of the joint defense. Thus, any non-waiving member of the joint defense may still assert the common interest privilege over not only

15

his own communications, but also those communications by other members that reveal his own otherwise-privileged communications.

This conclusion is not inconsistent with the court's holding in <u>BDO Seidman</u>, as the court in that case did not directly consider the issue of whether a party may reveal its own communications.  Furthermore, this holding is consistent with the Advisory Committee's Notes to proposed Federal Rule of Evidence 503(b), an authority relied on by the court in <u>BDO Seidman</u>.  These notes state that each member of a joint defense agreement is entitled to a privilege as to his own statements and, accordingly, may waive that privilege if he so chooses.  This holding is also consistent with other courts' interpretations of the common interest doctrine and, more specifically, the impact of one member's waiver of the common interest privilege.

In addition, this conclusion preserves the public policy behind the common interest doctrine, as it allows non-waiving members to protect any confidential disclosures they may have made pursuant to a joint defense agreement.  In other words, it will not allow one member of the joint defense to effectively eviscerate the common interest privilege by revealing each and every confidential communication made by any joint defense member.  However, this holding also allows any joint defense member to pursue his or her own interests by cooperating with the government, as they still may offer their own confidential communications in return for leniency.

**Attorney-Client Privilege in the Corporate Context**

The attorney-client privilege applies to corporations as well as to individuals.  <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 390 (1981).  "The administration of the attorney-client privilege in the case of corporations, however, presents special problems.  As an inanimate

16

entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985). When deciding whether a corporate officer or employee may claim an attorney-client privilege in communications with corporate counsel, the presumption "is that the attorney only represents the corporate entity, not the individuals within the corporate sphere." In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001). It is the individual's burden to dissipate that presumption. Id. "To determine when this presumption bursts, several courts have adopted the test explicated in In re Bevill, Bresler & Schulman Asset Mgt. Corp., 805 F.2d 120 (3d Cir. 1986)." In re Grand Jury Subpoena, 274 F.3d at 571.

The Bevill test delineates five benchmarks that corporate employees seeking to assert a personal claim of attorney-client privilege must meet:

> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.

In re Grand Jury Subpoena, 274 F.3d at 571-72 (citing In re Bevill, 805 F.2d at 123); see also, Grand Jury Proceedings v. United States, 156 F.3d 1038, 1041 (10th Cir. 1998); United States v. Int'l Brotherhood of Teamsters, 119 F.3d 210, 215 (2d Cir. 1997).

Although the court of appeals for this circuit did not expressly adopt the Beville test, in a case decided prior to Beville, the court rejected the contention that "an individual's mere subjective belief that he is represented . . . will always be sufficient to demonstrate

17

that such a relationship existed for the purpose of the attorney client privilege." United States v. Keplinger, 776 F.2d 678, 701 (7th Cir. 1985). In Keplinger, corporate managers charged with mail fraud, wire fraud, and making false statements sought to suppress the introduction of testimony and materials obtained from corporate counsel after the corporation had waived its attorney-client privilege. Id. at 699. The defendants asserted that the materials had been obtained in violation of their individual attorney-client privilege, notwithstanding the fact that they had never sought individual legal advice or asked questions relating to personal representation. Id. at 700. The court held that "in the absence of any relatively clear indication by the potential client to the attorney that he believed he was being. . . represented, we think no . . . attorney-client relationship can be inferred without some finding that the potential client's subjective belief is minimally reasonable." Id. at 701.

The Furr defendants agree with the government that they cannot assert individual privileges based on communications that they had solely in their capacity as agents or officers of IOS. They maintain that none of the assertions in their privilege logs relate to such communications.

According to defendants Balsiger and Currey, the entries in the log titled "IOS Case Master Database" assert defendant Thomas C. Balsiger's individual attorney-client privilege. Defendant Balsiger contends that he had a subjective belief that the attorneys of the Scott Hulse law firm were his personal attorneys.

Defendants Balsiger and Currey sufficiently established that Thomas C. Balsiger subjectively believed that the Scott Hulse law firm was his personal law firm and that such a belief was "minimally reasonable." See Keplinger, 776 F.2d at 701. Accordingly, in

18

considering the privilege log titled "IOS Case Master Database," the documents are privileged unless they were made in the presence of a third person who was not a member of the joint defense.

## Work Product Doctrine

Although similar to the attorney-client privilege, the work product doctrine is "'distinct from and broader than the attorney-client privilege.'" In re Special September 1978 Grand Jury (II), 640 F.2d 49, 62 (7th Cir. 1980) (quoting United States v. Nobles, 422 U.S. 225, 238 n.11 [1975]). Whereas "only confidential communications between the attorney and client are protected by the attorney-client privilege, the work product doctrine may encompass any document prepared in anticipation of litigation by or for the attorney." In re Special September 1978 Grand Jury (II), 640 F.2d at 62. The work product doctrine's purpose is to shelter "the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." Nobles, 422 U.S. at 238. Thus, the work product doctrine may be asserted by either the client or the attorney. In re Special September 1978 Grand Jury (II), 640 F.2d at 62. However, the "privilege is not absolute and may be waived." Nobles, 422 U.S. at 239.

## Crime Fraud Exception to the Attorney-Client and Work Product Privileges

"The crime-fraud exception places communications made in furtherance of a crime or fraud outside the attorney-client privilege" and the work product doctrine. BDO Seidman, 492 F.3d at 818 (citing United States v. Zolin, 491 U.S. 554, 563 [U.S. 1989]); In re Special September 1978 Grand Jury (II), 640 F.2d at 59 (concluding that "the client cannot assert the work product doctrine any more than he can assert the attorney-client

19

privilege when there has been ongoing client fraud."). Before the court can upset the attorney-client privilege or the work product doctrine under the crime-fraud exception, there must be "'something to give colour to the charge (of fraud); there must be prima facie evidence that it has some foundation in fact.'" In re Special September 1978 Grand Jury (II), 640 F.2d at 60 (quoting Clark v. United States, 289 U.S. 1, 16 [1933]). Where evidence of a crime or fraud exists, then the "seal of secrecy is broken." Id. at 61.

"A party has established a prima facie case whenever it presents evidence sufficient 'to require the adverse party, the one with superior access to the evidence and in the best position to explain things, to come forward with that explanation.'" United States v. Davis, 1 F.3d 606, 609 (7th Cir.1993) (quoting Matter of Feldberg, 862 F.2d 622, 626 [7th Cir.1985]). Establishing a prima facie case generally involves showing that probable cause exists to believe that a crime had been attempted and that the communications at issue were in furtherance of that crime. See Zolin, 491 U. S. at 572. In determining whether a party has established a prima facie case, the court can consider any "relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." Id. at 575. The privilege remains if the court finds the adverse party's explanation satisfactory. BDO Seidman, 492 F.3d at 819.

When it is the attorney, and not the client who asserts the work product doctrine, "the attorney's mental impressions, conclusions, opinions, and legal theories" are protected notwithstanding the fraudulent behavior of the client. In re Special September 1978 Grand Jury (II), 640 F.2d at 63.

## Specific Privilege Determinations

The court has individually evaluated every entry on the defendants' privilege logs.

20

In doing so, the court has considered the law as previously addressed. For instance, IOS waived its potential claims of common interest privilege, as well as its claims of attorney-client and work product privilege as to its own communications. To the extent any of the defendants were acting in his capacity as an officer of IOS or in his capacity as an employee of IOS, in making a communication, that communication is not privileged.

In addition, with respect to post-indictment documents, the government stated the following: "Unless the confidential communications underlying the Furrs' claims of joint defense privilege for these documents relate to then-ongoing acts of obstruction – such as the lawsuit against Kari Costello or the ongoing presentation of the store tag defense (e.g. in the context of the Scott Hulse subpoena litigation or the DAG letter) – the United States will not challenge the assertions for any document created after March 6, 2007." (Memorandum of the United States in Opposition to Defendants' Privilege Claims at 40-41). Thus, any post-indictment documents which did not relate to "then-ongoing acts of obstruction," were deemed privileged by the court.

The problems the court had with the log entries as related in its March 15, 2010, Decision and Order were not completely corrected by the defendants' revised and resubmitted logs. The logs submitted by defendants Balsiger and Currey are particularly problematic. Some of the log entries, for example, fail to indicate who prepared the document and/or the date of the document. Some documents include handwritten notes with no indication as to who made the notes. Many times the document upon which the notes were written is not privileged and because the court can not determine who made the handwritten notes, it has to conclude that the log entry is not privileged.

The documents the defendants claim are privileged include public documents,

21

published articles on various topics, firm biographical information on particular attorneys, fax transmittal sheets, shipping documents, search warrant information and letters and emails from Assistant United States Attorneys. These documents clearly are not privileged. When possible, the court separated the log entry into privileged and not privileged documents. However, some of the log entries include hundreds of pages of documents - 536 pages of documents in one case, 283 pages of documents in another. The log entries do not distinguish between those documents that are privileged and those documents that are not privileged. When a log entry contains hundreds of pages of unidentified documents, there is simply no reasonable way for the court to consider each document to determine whether it is privileged. Moreover, it is not the court's responsibility to do so. Therefore, the defendants have not met their burden of demonstrating, on a document by document basis, that all the requirements for invoking the privilege have been met. See In re Grand Jury Proceedings, 220 F.3d at 571; First State Bank, 691 F.2d at 335. Accordingly, these documents are not privileged.

Additionally, in some log entries, the defendants claim the joint defense privilege for documents prepared prior to the existence of any joint defense agreement. The first defendants entered into the joint defense agreement on September 12, 2005, according to the information provided to the court. In some cases, the documents had been prepared years prior to that date. These documents clearly are not privileged as a result of the joint defense agreement. Moreover, to the extent that any log entry claims joint defense privilege, but the document includes individuals who are not members of the joint defense agreement or had not yet joined the agreement, the document is not privileged. Finally, some of the log entries, as indicated below, contain no links. The documents at those log

22

entries without links are not privileged.

**DEFENDANTS BALSIGER – CURREY PRIVILEGE LOGS**

**Log #1:**     **Privilege Documents at Scott Hulse**

Not Privileged                          Bates Numbers
#24                                     SH-C 000811-000849
#25                                     SH-C 000866-000919
#37                                     SH-C 002116-002399
#38                                     SH-C 003266-003309
#43                                     SH-C 004169-004224
#45                                     SH-C 005787-005821
#46                                     SH-C 006821-006825
#47                                     SH-C 007879-008415
#53                                     SH-C 009934-009949
#135                                    SH-C 002801-002802
#136                                    SH-C 002803-002805
#137                                    SH-C 002967-002971
#138                                    SH-C 002972
#139                                    SH-C 002974-002976
#140                                    SH-C 002977-002978
#141                                    SH-C 002979-002982
#142                                    SH-C 002983-002986
#143                                    SH-C 002987-002990
#144                                    SH-C 002991-002994
#146                                    SH-C 003002-003004
#147                                    SH-C 003005-003007
#148                                    SH-C 003048-003051
#149                                    SH-C 003056-003061
#150                                    SH-C 003089-003093
#151                                    SH-C 003136-003190

Mixed Privilege
#19                                     SH-C000418-000440: 000422 - privileged; all other
                                        documents - not privileged
#20                                     SH-C 000453-000456: 00453 - privileged; all other
                                        documents - not privileged
#27                                     SH-C 001084-001087: latest dated email - privileged;
                                        four earliest dated emails - not privileged
#29                                     SH-C 001346-001354: 001346-001354 and 001357-
                                        001358 - privileged; 001355-001356 not privileged
#30                                     (SH-C 001349-001352) ##30, 31, and 32 contain
                                        the identical documents to those in #29.

23

#31                                 (SH-C 001354)
#32                                 (SH-C 001357-001358)

Log entries #55 through #65 contain no links to the documents.

**Log #2:**          **Scott Hulse Privileged Emails**

Not Privileged                      Date
#2                                  10/5/05
#3                                  10/6/05
#4                                  10/6/05
#5                                  10/6/05
#7                                  1/17/06
#8                                  1/17/06 attachment
#9                                  1/19/06
#10                                 1/19/06
#11                                 1/19/06 attachment
#12                                 2/13/06
#13                                 2/13/06 attachment
#19                                 4/19/06
#25                                 6/26/06
#33                                 8/18/06 attachments
#43                                 11/20/06
#44                                 11/20/06
#45                                 11/20/06 attachment
#52                                 1/5/07
#53                                 1/5/07 attachment
#58                                 1/17/07 attachment
#60                                 1/23/07 attachment
#72                                 3/6/07 attachment

Mixed Privilege
#6                                  1/16/06  three earliest dated emails - privileged;
                                       others - not privileged
#18                                 3/27/06   first page (transmittal) of attachments -
                                       privileged; remaining pages of attachment - not
                                       privileged
#32                                 8/18/06  email privileged; attachments - not privileged


**Log #3**:          **IOS-D.Bernard Case Related Email Privilege Log**

Not Privileged                      Date
#25                                 3/6/07
#26                                 3/6/07 attachment

24

| | |
|---|---|
| #41 | 1/5/07 |
| #42 | 1/5/07 attachment |
| #51 | 11/24/06 |
| #52 | 11/24/06 attachment |
| #55 | 11/20/06 |
| #56 | 11/20/06 |
| #57 | 11/20/06 attachment |
| #58 | 11/3/06 |
| #59 | 11/3/06 attachment |
| #72 | 8/18/06 attachment |
| #78 | 6/26/06 |
| #81 | 6/19/06 |
| #82 | 6/19/06 attachment |
| #86 | 5/10/06 |
| #92 | 2/13/06 |
| #93 | 2/13/06 |
| #97 | 1/17/06 |
| #98 | 1/17/06 |
| #108 | 12/13/05 |
| #109 | 12/13/05 |
| #113 | 10/10/05 |
| #114 | 10/10/05 |
| #115 | 10/10/05 |
| #116 | 10/10/05 |
| #119 | 10/5/05 |

Mixed Privilege

| | |
|---|---|
| #71 | 8/18/06 email privileged; attachments - not privileged |
| #87, #88 | 3/27/06 emails privileged; first page (transmittal) of attachments privileged; remaining part of the attachments - not privileged |
| #99 | 1/6/06 three earliest dated emails - not privileged; three latest dated emails - privileged |


**Log #4:**     **Scott Hulse Case Related Email Privilege Log**

| Not Privileged | Date |
|---|---|
| #10 | 6/19/06 |
| #11 | 6/19/06 attachment |
| #12 | 5/3/06 |
| #13 | 5/3/06 attachment |
| #14 | 12/4/06 |
| #15 | 4/26/06 attachment |
| #16 | 6/19/06 |

| | |
|---|---|
| #17 | 6/19/06 attachment |
| #18 | 6/19/06 |
| #19 | 6/19/06 attachment |
| #20 | 5/3/06 |
| #21 | 5/3/06 attachment |
| #22 | 3/24/06 |
| #23 | 3/24/06 attachment |
| #24 | 1/17/07 |
| #41 | 6/19/06 |
| #42 | 6/19/06 |
| #43 | 6/19/06 |
| #44 | 6/19/06 attachment |
| #45 | 11/21/05 |
| #46 | 11/16/05 |
| #47 | 11/16/05 |
| #48 | 11/16/05 |
| #49 | 11/16/05 |
| #50 | 11/15/05 |
| #51 | 11/15/05 |
| #52 | 11/15/05 |
| #53 | 11/15/05 |
| #54 | 6/19/06 |
| #55 | 6/19/06 attachment |
| #56 | 4/6/06 |
| #57 | 1/4/06 attachment |
| #58 | 10/19/05 |
| #59 | 11/24/06 |
| #60 | 5/8/06 attachment |
| #61 | 2/28/06 attachment |
| #62 | 11/24/06 attachment |

**Log #5:**     **IOS Case Master Database**

All Documents Are Privileged

**Log #6:**     **IOS Working Files From Local Hard Drives**

None of the Documents Are Privileged

**Log #7:**     **IOS PC Docs Open Case Related Documents as of 5/8/07**

| Not Privileged | Date |
|---|---|
| #4 | 1/3/06 |
| #5 | 1/4/06 |
| #6 | 1/13/06 |
| #7 | 2/13/06 |
| #8 | 2/13/06 |
| #9 | 2/14/06 |
| #10 | 3/1/06 |
| #11 | 3/6/06 |
| #12 | 3/27/06 |
| #13 | 5/3/06 |
| #14 | 7/14/06 |
| #15 | 8/21/06 |
| #16 | 12/21/05 |
| #17 | 1/4/06 |
| #19 | 3/3/06 |
| #22 | 7/17/06 |
| #23 | 1/11/07 |
| #27 | 2/20/07 |

Log entry #3 contains no link to the document dated 8/31/05.


**Log #8:      GT (Greenberg Traurig) Privileged Documents**

| No Privilege | Date | Bates Numbers |
|---|---|---|
| #20 | 11/14/05 | 200047 |
| #22 | 11/18 | 200050 |
| #23 | 11/6 | 200051 |
| #30 | 2/14/06 | 200100 |
| #31 | 2/14/06 | 200101 |
| #32 | 2/14/06 | 200102 |
| #33 | undated | 200111-200113 |
| #86 | undated | 200587-200600 |
| #87 | undated | 200601-200621 |
| #89 | undated | 200635-200657 |
| #91 | undated | 200670 |
| #106 | 6/13/06 | 200757-200788 |
| #107 | 6/13/06 | 200757-200788 |
| #109 | 5/23/06 | 200790-200792 |
| #111 | 4/1/06 | 200802-200808 |
| #123 | 2/7/07 | 200981-200983 |
| #140 | undated | 201347-201348 |
| #143 | 11/10/05 | 210363 |
| #149 | undated | 210564-201574 |

| #155 | undated | 201654 |
| #156 | undated | 201655 |
| #157 | 9/21/05 | 201662-201664 |

Mixed Privilege

| #73 | 8/30/06 | 200482-200484 six latest dated emails and earliest dated email-not privileged; three middle emails - privileged |
| #104 | 8/30/06 | #104 - pages go from 200743 to 200808. 200743, 200746-200747, 200751-200756, 200761-200792, 200803-200807-not privileged; all others privileged |
| #124 | 11/20/06 | #124 - contains documents from 200987 to 201011. 201001-201002 and 201008-20101-privileged; 200889-200890 - not privileged |
| #141 and #142 | 4/19/06 | Contains documents 201353 through 201183 Most pages included under document ##142-148 201353-201362 and 201381-201383 not privileged; all others privileged |
| #147 | 11/16/05 | 201375 - 201380 privileged; 201381-201383 - not privileged |
| #148 | undated | 201375-201380 - privileged; 201381-201383 - not privileged |

The document at log entry #88 could not be opened.
Some documents do not have attachments as indicated.


**Log #9:** **GT Documents at U.S. Attorney's Office in Milwaukee, WI**

| Not Privileged | Date | Bates Numbers |
|---|---|---|
| #3 | 6/16/06 | 188067-188071 |
| #5 | 6/16/06 | 188075-188090 |
| #6 | 6/15/06 | 188091-188103 |
| #7 | 6/15/06 | 188104-188110 |
| #11 | 5/3/06 | 188519-188566 |
| #12 | 4/6/06 | 188915-188962 |
| #14 | 3/2/06 | 189182-189183 |
| #16 | 2/13/06 | 189335-189336 |
| #18 | 2/13/06 | 189339-189340 |

Mixed Privilege

28

| #9 | 6/19/06 | 188180-188182 and 188219-188234, privileged; 188174-188179 and 188183-188218, not privileged |
| #17 | 2/13/06 | 189338 earliest dated email - privileged; other email - not privileged |

## Log #10:    Abigail Clapp Privileged Email

| Not Privileged | Date |
|---|---|
| #3 | 10/14/05 |
| #4 | 10/14/05 attachment |
| #5 | 10/14/05 attachment |
| #7 | 10/14/05 |
| #8 | 10/17/05 |
| #32 | 11/21/05 |
| #40 | 1/17/06 |
| #41 | 1/17/06  attachment |
| #46 | 1/19/06 |
| #47 | 1/19/06  attachment |
| #66 | 3/30/06 |
| #67 | 3/30/06  attachment |
| #70 | 4/19/06 |
| #78 | 4/28/06 attachment |
| #79 | 4/28/06 attachment |
| #80 | 4/28/06 attachment |
| #81 | 4/19/06 |
| #82 | 4/19/06 attachment |
| #86 | 5/23/06 |
| #87 | 5/23/06 attachment |
| #93 | 6/20/06 |
| #95 | 6/20/06 attachment |
| #102 | 8/23/06 attachment |
| #103 | 8/23/06 attachment |
| #104 | 8/23/06 attachment |
| #105 | 6/19/06 |
| #114 | 6/19/06 |
| #115 | 6/19/06 attachment |
| #117 | 6/19/06 attachment |
| #119 | 6/19/06 attachment |
| #120 | 6/19/06 attachment |
| #121 | 6/19/06 attachment |
| #124 | 11/20/06 |
| #125 | 11/20/06 attachment |

Case 2:07-cr-00057-CNC -PJG   Filed 05/11/11   Page 29 of 42   Document 472

| Mixed Privilege | Date |
| --- | --- |
| #39 | 1/16/06   three latest dated emails - privileged; other emails - not privileged |
| #48 | 1/19/06   latest dated email - privileged; other emails not privileged |
| #75 | 4/27/06  earliest dated email and second latest dated email - privileged; other emails - not privileged |
| #123 | 8/30/06   second and third earliest dated emails - privileged; other emails - not privileged |
| #126 | 11/29/06   latest dated email - privileged; earliest dated email and attachment - not privileged |
| #133 | 1/3/07   two earliest dated emails - privileged; other email - not privileged |
| #137 | 2/7/07  three earliest dated emails - privileged; others - no privilege |

Log entries ##138 and 139 contain no links to the documents.
The document at log entry #160 could not be accessed.


**Log #11:**     **Bevin Brennan Privileged Email**
All Documents Are Privileged


**Log #12:**     **Privilege Log Regarding Bill Clark Materials**

| Not Privileged | Date |
| --- | --- |
| #2 | Undated |
| #5 | Undated |
| #6 | 3/21/06 |
| #7 | Undated |
| #8 | 3/21/06 |
| #9 | Undated |
| #10 | Undated |
| #11 | 6/19/06 |
| #12 | 6/19/06 |
| #13 | 7/5/05 |
| #14 | Undated |
| #17 | 6/6/05 |
| #18 | 6/21/05 |
| #19 | 12/8/05 |
| #20 | 8/23/05 |
| #21 | 10/5/05 |

Log entries #22 and #23 contain no links to the documents.

**Log #13:**      **IOS GT Email #1 – Jim Richmond Email Privilege Log**

| Not Privileged | Date |
|---|---|
| #2 | 10/4/05 |
| #6 | 10/13/05 |
| #7 | 10/14/05 |
| #11 | 10/19/05 |
| #12 | 10/26/05 |
| #13 | 10/26/05 |
| #14 | 10/26/05 |
| #15 | 10/26/05 |
| #20 | 10/28/05 |
| #24 | 1/17/06 |
| #25 | 1/17/06 attachment |
| #31 | 2/13/06 |
| #32 | 2/13/06 attachment |
| #33 | 2/13/06 |
| #34 | 2/13/06 attachment |
| #35 | 2/13/06 |
| #38 | 2/28/06 |
| #39 | 3/15/06 |
| #40 | 3/15/06 attachment |
| #44 | 4/6/06 |
| #45 | 4/6/06 attachment |
| #46 | 4/7/06 |
| #47 | 4/13/06 |
| #48 | 4/13/06 attachment |
| #49 | 4/21/06 |
| #52 | 5/3/06 |
| #53 | 5/3/06 attachment |
| #54 | 5/9/06 |
| #56 | 6/19/06 |
| #58 | 6/19/06 |
| #60 | 6/19/06 |
| #62 | 6/20/06 |
| #64 | 6/26/06 |
| #66 | 7/6/06 |
| #70 | 11/20/06 |
| #71 | 11/20/06 |
| #79 | 1/5/07 |

Mixed Privilege

| #23 | 1/13/06  three earliest dated emails - not privileged; latest email - privileged |
|---|---|

| #26 | 1/17/06  earliest dated email - not privileged; others - privileged |
| #27 | 1/17/06  earliest dated email - not privileged; others - privileged |
| #50 | 4/21/06  scj.tif - not privileged; memorandum - privileged |
| #59 | 6/19/06  Interviews and/or memos of Wenona Freeman, Greg Marlett, Luciano Solis and Mike Norris - not privileged; Kevin Perry and Bill Babler interviews and/or memos - privileged |
| #61 | 6/19/06  Interviews and/or memos of Wenona Freeman, Greg Marlett, Luciano Solis and Mike Norris - not privileged; Interviews and/or memos of Kevin Perry and Bill Babler - privileged |
| #63 | 6/20/06  audit.do.tif - not privileged; audit.tif - privileged |
| #65 | 6/26/06  email - not privileged; "Rest of June 15-16 memo:"  Interview and or memo of Kevin Perry and Bill Babler privileged; others - not privileged |
| #68 | 8/2/06   two earliest dated emails - not privileged; other - privileged |
| #73 | 1/3/07  two earliest dated emails - privileged; other - not privileged |

**Log #14:      IOS – GT Email #1 – Kevin Finger – Segreg – Privilege Email**

| Not Privileged | Date |
|---|---|
| #2 | 10/3/05 |
| #5 | 10/3/05 |
| #6 | 10/4/05 |
| #7 | 10/4/05 |
| #8 | 10/4/05 |
| #9 | 10/4/05 |
| #26 | 10/13/05 attachment |
| #36 | 10/17/05 |
| #44 | 10/26/05 |
| #45 | 10/26/05 |
| #46 | 10/26/05 |
| #47 | 10/26/05 |
| #48 | 10/26/05 |
| #49 | 10/26/05 |
| #50 | 10/26/05 |
| #58 | 10/27/05 |
| #61 | 10/27/05 |

| | |
|---|---|
| #62 | 10/27/05 |
| #63 | 10/27/05 |
| #65 | 10/27/05 attachment |
| #80 | 11/30/05 |
| #97 | 1/17/06 attachment |
| #106 | 1/17/06 |
| #107 | 1/17/06 attachment |
| #112 | 2/13/06 attachment |
| #143 | 3/26/06 |
| #144 | 3/26/06 attachment |
| #156 | 3/30/06 attachment |
| #158 | 4/3/06 attachment |
| #163 | 4/4/06 |
| #164 | 4/4/06 attachment |
| #168 | 4/4/06 attachment |
| #170 | 4/4/06 |
| #173 | 4/6/06 |
| #179 | 4/19/06 |
| #180 | 4/19/06 attachment |
| #186 | 5/23/06 |
| #187 | 5/23/06 attachment |
| #228 | 6/27/06 |
| #229 | 6/27/06 attachment |
| #255 | 8/23/06 attachment |
| #266 | 11/20/06 |
| #267 | 11/20/06 |
| #268 | 11/20/06 |
| #269 | 11/20/06 |
| #270 | 11/20/06 same document is at #267, but not included on drive |
| #271 | 11/20/06 |
| #272 | 11/20/06 |
| #284 | 12/13/06 |
| #289 | 1/4/07 |
| #290 | 1/4/07  attachment |
| #291 | 1/6/07 |
| #292 | 1/6/07 attachment |
| #293 | 1/6/07 |
| #294 | 1/6/07 attachment |
| #297 | 1/6/07 |
| #298 | 1/6/07 |
| #299 | 1/6/07 |
| #300 | 1/6/07 |

33

Mixed Privilege

| | |
|---|---|
| #92 | 1/13/06  latest dated email - privileged; others - not privileged |
| #93 | 1/13/06  two latest dated emails-privileged; others - not privileged |
| #94 | 1/13/06  two latest dated emails- privileged; others - not privileged |
| #95 | 1/16/06  three latest dated emails-privileged; others - not privileged |
| #108 | 1/19/06  latest dated email - privileged; others - not privileged |
| #111 | 2/13/06  latest dated email - privileged; other - not privileged |
| #116 | 2/13/06  two latest dated emails -privileged; other - not privileged |
| #146 | 3/27/06  first page (transmittal) of attachments - privileged, remaining pages of attachments - not privileged |
| #149 | 3/27/06  first page (transmittal) of attachments - privileged; remaining pages of attachments - not privileged |
| #151 | 3/27/06  first page (transmittal) of attachments - privileged; remaining pages of attachments - not privileged |
| #154 | 3/27/06  first page (transmittal) of attachments - privileged; remaining pages of attachments - not privileged |
| #166 | 4/4/06  first page (transmittal) of attachments - privileged; remaining pages of attachments - not privileged |
| #179 | 4/1/06  last dated email - privileged; other email - not privileged; remaining pages of attachment - not privileged |
| #215 | 6/19/06  attachments: interview and/or memo of Wenona Freeman, Greg Marlett, Luciano Solis, Mike Norris - not privileged; Interview and/or memo of Bill Babler and Kevin Perry - privileged |
| #217 | 6/20/06  attachments: audit.tif - privileged, audit-do.tif - not privileged |
| #232 | 6/27/06 first page (transmittal) of attachment - privileged; remaining pages of attachment - not privileged |

Log entry #270 contains no link to the document.

**Log #15:**      **IOS GT Email #1 – Kevin Finger Production Emails Privilege Log**

| Not Privileged | Date |
|---|---|
| #2 | 9/26/05 |
| #3 | 10/13/05 |
| #4 | 10/13/05 |
| #5 | 10/13/05 |
| #6 | 10/14/05 |
| #13 | 10/28/05 |
| #23 | 12/20/05 |
| #24 | 1/27/06 |
| #25 | 1/27/06 |
| #26 | 2/6/06 |
| #27 | 2/7/06 |
| #28 | 2/13/06 |
| #29 | 2/13/06 |
| #30 | 2/13/06 |
| #31 | 2/13/06 |
| #32 | 2/16/06 |
| #33 | 2/16/06 |
| #34 | 2/16/06 attachment |
| #35 | 2/16/06 |
| #38 | 2/28/06 |
| #39 | 2/28/06 |
| #40 | 3/15/06 |
| #41 | 3/15/06 attachment |
| #44 | 4/26/06 |
| #46 | 4/26/06 |
| #47 | 4/26/06 attachment |
| #48 | 4/28/06 |
| #50 | 5/3/06 |
| #51 | 5/3/06 attachment |
| #53 | 6/19/06 |
| #54 | 6/19/06 attachment |
| #62 | 8/29/06 |
| #64 | 11/22/06 |
| #65 | 11/22/06 attachment |
| #66 | 11/23/06 |
| #67 | 11/23/06 attachment |
| #68 | 11/27/06 |
| #72 | 12/4/06 |
| #73 | 12/4/06 attachment |
| #74 | 12/4/06 |
| #75 | 12/4/06 |

35

Mixed Privilege

| | |
|---|---|
| #55 | 8/2/06  earliest dated email - not privileged; others - privileged |
| #56 | 8/2/06  earliest dated email - not privileged; others - privileged |
| #76 | 1/3/07  two earliest dated emails - privileged; others - not privileged |
| #77 | 1/3/07  earliest dated email - privileged; others - not privileged |
| #78 | 1/3/07  two earliest dated emails - privileged; others - not privileged |
| #80 | 1/3/07  two earliest dated emails - privileged; others - not privileged |
| #82 | 1/3/07  two earliest dated emails - privileged; others - not privileged |
| #83 | 1/3/07  two earliest dated emails - privileged; others - not privileged |
| #84 | 1/3/07  two earliest dated emails - privileged; others - not privileged |
| #85 | 1/3/07  two earliest dated emails - privileged; others - not privileged |
| #86 | 1/3/07  two earliest dated emails - privileged; others - not privileged |
| #87 | 1/3/07  earliest dated email - privileged; others - not privileged |
| #88 | 1/3/07  two earliest dated emails - privileged; others - not privileged |
| #90 | 1/3/07  earliest dated email - privileged; others - not privileged |
| #91 | 1/3/07  earliest dated email - privileged; others - not privileged |
| #94 | 1/3/07  earliest dated email - privileged; others - not privileged |
| #95 | 1/3/07  two earliest dated emails - privileged; others - not privileged |
| #96 | 1/4/07  two earliest dated emails - privileged; others - not privileged |
| #97 | 1/4/07  two earliest dated emails - privileged; others - not privileged |
| #99 | 2/14/07  earliest dated email - privileged; other - not privileged |

Other issues

| | |
|---|---|
| #42 | 3/15/06 attachment - there is no link to this document |

36

#45      4/26/06 attachment - document could not be opened
#49      4/28/06 attachment - document could not be opened
#52      5/3/06  attachment - there is no link to this document

Log entries on the drive go to #239, even though Log 15 only goes to #175. These additional log entries on the drive are dated post 3/7/07 and are privileged.


## FURR DEFENDANTS' PRIVILEGE LOGS

### Furr Defendants – Greenburg Traurig Documents

Privileged Documents
114210-114215
166859
167017-167021

Mixed Privilege
165788-165790    First page (165788) - not privileged; 165789-165790 - privileged


### Privilege Log for Steven Furr – Scott Hulse Documents

All documents are privileged:
SH-C-005498
SH-C 000531-588
SH-B 001279
SH-B 001264
SH-B 001266
SH-B 002356 - 50 (actually # is 60)


### Lance Furr Privilege Log Re: Documents Possessed by Scott Hulse

Provide Redacted Version For:
SH-B 001257
SH-B 001301
SH-C 002539
SH-F 009117

Privileged Documents
SH-B 001264
SH-B 001266

SH-B 001279
SH-C 000531-532
SH-C 00533

<u>Not Privileged</u>
SH-C 009934-9935


**<u>Furrs' Narrowed and Resubmitted Privilege Claims for Documents from Certain Balsiger and Currey Privilege Logs</u>**

<u>Provide Redacted Versions For:</u>

<u>Exhibit F Documents:</u>
Tab 6  ##220-221
Tab 7  #656
Tab 8  #705
Tab 9  #706
Tab 10 ##342-343
Tab 11 ##282-283
Tab 12 ##284-285 (same as Tab 11, ##282-282, but no redacted copy provided)
Tab 16  #576
Tab 17  #577
Tab 18  #1144
Tab 19  #1182
Tab 20  ##342-343  (duplicate: Exh I 100-101)
Tab 21  #891  (duplicate: Exh I, #314)
Tab 22  #1070   (duplicate: Exh I, #340)
Tab 23  #1071 (duplicate: Exh I, #341)
Tab 24  #1072

<u>Exhibit G Documents:</u>
Tab 25  ##389-390
Tab 26  ##1023-1024

<u>Exhibit H Documents:</u>
Tab 27  ##153-154

<u>Exhibit I Documents:</u>
Tab 34  #237
Tab 35  #238 (Tab 57, Exh J, #215 is the same, but no redacted copy provided)
Tab 36  #262
Tab 40  #52-53
Tab 42  #243

38

Tab 49  ##68
Tab 50 ##96-97
Tab 53
Tab 54
Tab 56

Exhibit J Documents
Tab 57 #215 (same document as Tab 35 #238 which has a redacted version)
Tab 65 ##116-117 (duplicate: Exh. I, ##100-101)

Not Privileged
Tab 29 ##208-209

All other documents are privileged.


**Furr Supplemental Privilege Log  - 4/15/10**

Provide Redacted Version For:
##200450-200452
##200453-200455
##200470-200472
##200473-200474
##200475-200477
##200475-200477
##200478-200480
##200493-200494
##200493-200494
##200493=200494
##200506-200507
##200695-200696
##200695-200696
##200695-200696
##200697-200698
##200699-200700
##200699-200700
##200701-200702
##200701-200702
##200701-200702
#200793
##200794-200795
#200893
##200898-200900
##200898-200900
#200906

39

#200906
#200907
##201612-201628

Not Privileged
063718-200034

Privileged Documents
063718-200010
063718-200035
063718-200037
063718-200037
063718-20044-46
063718-20048-49
063718-20052-66
063718-200071-72
063718-200077

The following emails are on disc provided by the Furr defendants, but they are not on the log:
##200461-200463
##200482-200484
##200485-200487
##200488-200490
#200513
##200516-200518
##200861-200862
##200980-200983

Additionally, they are not in the paper copies of the documents provided to the court by the Furr defendants.  The court makes no privilege determination as to these documents.


**FURR - REVISED SCOTT HULSE PRIVILEGE LOG - dated April 15, 2010**

There are also a number of documents that are included on the CD, but not listed on the log.  They are as follows:

SH-EDOC0004861-4862
SH-EDOC0004864-4865
SH-EDOC0010436-10438
SH-EDOC0010439-10441
SH-EDOC0010016-10017 dated 6/15/07
SH-EDOC0011702

40

SH-EDOC0011703
SH-EDOC0011945
SH-EDOC0011947
SH-EDOC0011953-11955
SH-EDOC0011956
SH-EDOC0012147-12148


Provide redacted documents for:
SH-EDOC0010772-10773
SH-EDOC0012457-12458
SH-EDOC0013616-13618
SH-EDOC0013619-13621
SH-EDOC0018925-18926
SH-EDOC0018927-18928
SH-EDOC0027705-27706
SH-EDOC0027707-27708
SH-EDOC0027713-27715
SH-EDOC0027716-27718


Mixed privilege
SH-EDOC0010521-10523        two  earliest  dated emails - privileged; two latest
                            dated emails - not privileged.
SH-EDOC0010524-10526        two earliest dated emails - privileged; two latest dated
                            emails - not privileged
SH-EDOC0015027-10529        two earliest dated emails - privileged; two latest dated
                            emails - not privileged


Not Privileged
SH-EDOC0004777-4778
SH-EDOC004779-4780___
SH-EDOC0028394
SH-EDOC0028395
SH-EDOC0028417-28418


Privileged Documents
All other documents not listed above are privileged.

## CONCLUSION

**NOW, THEREFORE, IT IS ORDERED** that the privilege claims of the Furr

defendants are denied in part and granted in part as stated herein.


41

**IT IS FURTHER ORDERED** that the privilege claims of defendants Balsiger and Currey are denied in part and granted in part as stated herein.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General L. R. 72.3 (E.D. Wis.), whereby written objection to any order herein or part thereof may be filed within fourteen days of service of this order.  Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures.  Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case.  Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin, this 10th day of May, 2011.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge