# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

        **v.**                                              **Case No. 07-CR-57**

**THOMAS C. BALSIGER**
        **Defendant.**

## DECISION AND ORDER

On March 6, 2007, the government indicted International Outsourcing Services ("IOS"), a coupon clearinghouse, its CEO, Thomas C. Balsiger, and others on wire fraud offenses. The indictment alleged that the defendants devised and participated in a scheme to defraud manufacturers that issued coupons for consumer products, large retailers, and others by knowingly submitting fraudulent coupons to manufacturers for reimbursement. In a superseding indictment returned on December 5, 2007, the grand jury charged defendant Balsiger with 25 counts of wire fraud (counts 1-25), conspiracy to commit wire fraud (count 26), and conspiracy to obstruct justice (count 27).

Following extensive pre-trial proceedings, defendant Balsiger proceeded, pro se, to a court trial before Judge Clevert, which lasted from October 5, 2016, to November 7, 2016. On December 5, 2016, Judge Clevert rendered his verdict, finding defendant not guilty as to counts 1-15 and guilty as to counts 16-27. On March 6, 2017, Judge Clevert sentenced defendant to a total of 120 months in prison. The judgment issued on March 24, 2017.

On April 4, 2017, defendant filed a motion for a new trial pursuant to Fed. R. Crim. P.

33 based on "newly discovered evidence."[1]  The case was reassigned to me due to Judge Clevert's retirement, and I ordered the government to respond.  In that response, the government argued, <u>inter alia</u>, that the evidence upon which defendant relied was not "new," as it had been produced in discovery in the case.  On May 5, 2017, defendant filed a motion for leave to file a second motion for a new trial, this time relying on the "interest of justice."  The government opposed leave, arguing that the motion was untimely.

I deny both motions.  The government conclusively shows that the contract upon which defendant relies in his first motion is not new, and defendant fails to show that his failure to timely file the second motion was based on excusable neglect.

## I.  RULE 33

The district court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Motions based on "newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(1).  Motions "grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2).  The court may extend the 14-day period after its expiration "if the party failed to act because of excusable neglect."  Fed. R. Crim. P. 45(b)(1)(B).

The district court may not grant a new trial while an appeal is pending.  However, the court may entertain the motion and either deny it or, if inclined to grant a new trial, so certify to the court of appeals.  <u>United States v. Blankenship</u>, 970 F.2d 283, 285 (7th Cir. 1992).

---

[1]On April 5, 2017, he filed a notice of appeal.

## II. DEFENDANT'S FIRST MOTION (NEWLY DISCOVERED EVIDENCE)

In order to obtain a new trial based on newly discovered evidence, the defendant must show that the evidence (1) came to his knowledge only after trial; (2) could not have been discovered any sooner using due diligence; (3) is material and not merely impeaching or cumulative; and (4) probably would lead to an acquittal in the event of a new trial. United States v. Eads, 729 F.3d 769, 780 (7th Cir. 2013); United States v. Hodges, 315 F.3d 794, 801 (7th Cir. 2003). Defendant cannot satisfy the first element of this test.

Defendant contends that at the March 6, 2017 sentencing hearing, specifically during the parties' argument concerning loss amount, he realized for the first time that the court relied on a 1996 contract in finding him guilty. He contends that the 1996 contract upon which the court relied was superseded by a 2001 agreement, which contains different terms and which had not been introduced into evidence at trial. After the hearing, he located a copy of the 2001 agreement, which, he contends, constitutes newly discovered evidence.

The problem with defendant's argument is that he did not discover the 2001 agreement after trial. As the government shows, defendant executed this agreement on behalf of IOS in April 2001 (R. 1001 Ex. B at 18); he authorized its production to the government during the investigation (R. 1025 Ex. A, B, C); and he received copies of it as part of the discovery once the case was charged (R. 1025 at 9-10). Further, while the 2001 agreement was apparently not introduced as an exhibit at trial, it was referenced in admitted exhibits (Trial Ex. 236, 237, 238); defendant questioned witnesses about the "one-step" procedure it created (Trial Tr. at 1124-25, 1275-76, 1535-36, 1540, 1554-55); and he discussed the April 2001 contract during his own testimony (Trial Tr. at 2550-51). Indeed, at sentencing, defendant's counsel noted that during his trial testimony defendant testified that the 1996 contract was superseded by the one-

3

step agreement.[2]  (Sen. Tr. at 87.)

Defendant disputes none of these facts.  Instead, he argues that at the time of trial he did not understand the significance of the 2001 agreement.  However, the Seventh Circuit has consistently held that a defendant cannot obtain relief under Rule 33 where the facts underlying his claim were known at the time of trial, even though he may not have then understood their legal significance.  United States v. Gootee, 34 F.3d 475, 480-81 (7th Cir. 1994) (citing United States v. Ellison, 557 F.2d 128, 133 (7th Cir. 1977); Roach v. Stastny, 104 F.2d 559, 562 (7th Cir.1939)).  Defendant attempts to avoid this rule by noting the complexity of the case, the volume of discovery, the delay in getting the case to trial, his health issues, and his pro se status at trial.  However, he cites no authority in support of his claim that a different rule should apply under these circumstances.[3]

Because defendant was aware of the evidence upon which he now relies prior to and at trial, he cannot satisfy the first prong of the test and his motion must be denied.  I accordingly need not address the materiality of the 2001 agreement.

### III.  DEFENDANT'S SECOND MOTION (MISCARRIAGE OF JUSTICE)

Defendant concedes that his second motion, which argues that conviction based on the "wrong contract" would constitute a miscarriage of justice, is untimely under Rule 33(b)(2).  He therefore seeks an extension of time under Rule 45(b)(1)(B) based on excusable neglect.

---

[2]In his affidavit in support of the instant motion, defendant admits that he was aware the 1996 agreement was not in effect in 2003, when the wire transfers charged in counts 16-25 occurred, having been superseded by the one-step agreement.  (R. 1001-1 at 1.)

[3]Even if a more lenient standard should apply in pro se cases, here, defendant was personally involved in the creation and production of the contract upon which he now relies. His cross-examination of witnesses and testimony at trial also show that he was aware of the potential significance of the two-step v. one-step issue.

4

The test as to what constitutes excusable neglect is an equitable one, taking account of all relevant circumstances surrounding the party's omission. United States v. Cates, 716 F.3d 445, 448 (7th Cir. 2013) (citing Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395 (1993)). The factors to be balanced in making this equitable determination include the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. Id.

In arguing that his failure to timely file the motion should be excused, defendant again notes the complexity of the case, the volume of the discovery, his health issues, and his pro se status at trial. He contends that he could not have known, prior to the March 2017 sentencing hearing, that the court relied on the old, two-step contract in finding him guilty. Upon making this discovery, he promptly and in good faith brought the matter to the court's attention.

Defendant fails to explain how the complexity of the case and the volume of discovery relate to the issue of excusable neglect in filing this post-conviction motion. Nor does he specifically link his health issues to the time period at issue. He again cites no authority excusing a pro se litigant from the deadlines set forth in the Rules, and the docket reveals that counsel entered an appearance on defendant's behalf on December 15, 2016, shortly after Judge Clevert rendered the verdict. (R. 894.) Defendant contends that he could not have known the basis for the court's ruling until sentencing in March 2017, but this overlooks Fed. R. Crim. P. 23(c), which permits either side to request specific findings. In any event, even if what he heard at the sentencing hearing should carry such significance, defendant fails to

5

explain why he waited another 60 days to file this motion. See Cates, 716 F.3d at 448 (characterizing two months as a "lengthy delay").[4]  In sum, defendant fails to provide a specific and convincing explanation for his delay. See id. at 449 (citing In re Canopy Financial, Inc., 708 F.3d 934, 937 (7th Cir. 2013) ("Whenever the judiciary adopts an 'all the facts and circumstances' approach, as Pioneer Investment Services did, litigants need to supply those details.")).

The Pioneer factors also weigh against the motion.  First, given the nature of this case, requiring a retrial now would be prejudicial to the government.  While there is potential prejudice in any retrial, even when the motion is timely filed, see United States v. Munoz, 605 F.3d 359, 371 (6th Cir. 2010), the particulars of this case would make trying the case again particularly hard.  The conduct alleged occurred between 1997 and December 2006, 10 to 20 years ago; witness memories are likely to have faded during that time.  Further, the case was set for trial several times before it actually proceeded, at considerable expense to the government in securing witnesses, only to be adjourned due to defendant's health issues. Finally, several cooperating defendants testified for the government in this case.  Those defendants have already been sentenced and are now serving probationary terms; the government would likely have less "leverage" over these witnesses should the case be tried again.[5]

_____

[4]In reply, defendant cites various cases in which courts found excusable neglect despite longer delays.  Because each case must be considered on its particular facts, these citations are of limited value.

[5]Citing Munoz, defendant argues in reply that the government could, if the cooperators balked at testifying at a new trial, seek specific performance of their plea agreements or threaten to withhold Rule 35(b) motions.  It appears that the cooperators were sentenced to probationary terms (see, e.g., R. 979), which would almost certainly be discharged by the time

Second, the delay in bringing the instant motion, five months after the verdict and two months after the sentencing hearing, is significant. See Cates, 716 F.3d at 448-49. The impact on the court in granting a new trial would also likely be substantial. Judge Clevert spent several weeks trying this case and plainly spent a significant amount of time on it. In the typical court trial situation, the judge can "take additional testimony and enter a new judgment." Fed. R. Crim. P. 33(a). However, Judge Clevert retired before the instant motion was filed. It seems highly unlikely that I, as successor judge, could simply receive additional evidence; I would likely have to hear the entire case again.[6]

Third, the delay was within defendant's control. Even if, as he claims, the significance of the one-step contact became clear only at sentencing, he does not justify the additional two month delay in bringing the instant motion. Even if he had trouble locating a physical copy of the one-step contract at that time, nothing prevented him from promptly filing a motion for a new trial or seeking leave do so. His two month delay in filing the instant motion displays lack of diligence.[7] It instead appears that he filed the instant motion only after the government pointed out, in response to the first motion, that the evidence upon which he relied was not "new." And, as discussed above, it appears that defendant was well aware of the one-step v.

---

a new trial occurred. It is unclear how the government could, with these witnesses no longer serving sentences, use these techniques as leverage.

[6]If it were necessary to hear the case again, so be it; I do not deny this motion to avoid work. However, the impact on the court and its staff is a relevant factor. See Cates, 716 F.3d at 749. In reply, defendant notes that the court would not have to hear the entire case, just counts 16-26; but that would still take a significant amount of time, as the count 26 conspiracy includes the entire period at issue, 1996 to 2007.

[7]In his reply, defendant notes that he filed various other documents during this time, but he does not justify the delay in filing the instant motion.

two step issue at trial.

Fourth, the government strenuously argues that, by delaying the filing of both motions until after Judge Clevert retired, defendant is engaging in a kind of "forum shopping," seeking to have a different judge reconsider the argument he presented to Judge Clevert via a Rule 35 motion. In reply, defendant notes that he did bring the one-step contract to Judge Clevert's attention (via the Rule 35 motion for modification of sentence) shortly after the sentencing hearing, and he promptly filed the instant motion after locating the contract and copies of two amendments. However, he never explains why he did not present his current argument – that the one-step contract supports grant of a new trial – to Judge Clevert at a time when Judge Clevert could have considered the merits and possibly received additional evidence.

Finally, I note that defendant still has the opportunity challenge his conviction, including the sufficiency of the evidence, and his sentence, including the loss figures upon which it was based, on direct appeal. See Cates, 716 F.3d at 450. Denial of these tardy motions will not prevent further review of those matters.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion for a new trial (R. 1001) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion for leave to file a second motion for a new trial (R. 1028) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2017.

/s Lynn Adelman
LYNN ADELMAN
District Judge