UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

--------------------------------------------------------------

UNITED STATES OF AMERICA,      )
                                   )
              Plaintiff,     )   Case No. CR 07-57
                                   )   Milwaukee, Wisconsin
    vs.                      )
                                   )   December 5, 2016
THOMAS C. BALSIGER,         )   2:30 p.m.
                                   )
              Defendant.     )

--------------------------------------------------------------

## TRANSCRIPT OF BENCH TRIAL VERDICT

BEFORE THE HONORABLE CHARLES N. CLEVERT, JR.

UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES:

For the Government:        Office of the US Attorney
                             By: **Richard G. Frohling,**
                                 **Kelly B. Watzka,**
                                 **Stephen Ingraham**
                               **Zachary John Corey**
                            517 E Wisconsin Ave - Rm 530
                            Milwaukee, WI 53202
                            Ph: 414-297-4528
                            Fax: 414-297-1738
                            Email: richard.frohling@usdoj.gov
                            Email: kelly.watzka@usdoj.gov
                            Email: stephen.ingraham@usdoj.gov
                            Email: zachary.corey@usdoj.gov

Also Present:              **Stephan Vitale**, FBI, Case Agent

For the Defendant:         **Thomas C Balsiger**, Pro Se, with
                            Stand-By Counsel Patrick Coffey
                            825 W Sunset Drive
                            El Paso, TX 79922

U.S. Official Reporter:    JOHN T. SCHINDHELM, RMR, CRR,
Transcript Orders:        WWW.JOHNSCHINDHELM.COM

Proceedings recorded by computerized stenography,
transcript produced by computer aided transcription.

1

1                P R O C E E D I N G S (2:32 p.m.)

2            THE COURT:  Please call the case.

3            THE CLERK:  Case No. 2007-CR-57, United States of

4    America vs. Thomas C. Balsiger.  This matter is before the Court

02:33   5    for a verdict.  May we have the appearances, please?

6            MR. FROHLING:  The United States appears by Assistant

7    U.S. Attorneys Rick Frohling, Kelly Watzka, Zach Corey and Steve

8    Ingraham in person.  And with the Court's permission.  Special

9    Agent Vitale from the FBI is on the phone.  Good afternoon.

02:33   10           THE COURT:  Good afternoon.

11           MR. COFFEY:  Good afternoon, Your Honor.  Court's

12    appointed standby counsel Patrick Coffey present.

13           THE COURT:  Greetings.

14           MR. BALSIGER:  Chris Balsiger.

02:34   15           THE COURT:  Good afternoon to you as well.

16           I am handing to the clerk the verdict in this case.

17    Please publish the verdict.

18           THE CLERK:  Verdict in Case No. 2007-CR-57, United

19    States of America vs. Thomas C. Balsiger.

02:34   20           As to Count 1, not guilty.

21           As to Count 2, not guilty.

22           As to Count 30, not guilty.

23           As to Count 4, not guilty.

24           As to Count 5, not guilty.

02:34   25           As to Count 6, not guilty.

2

1       As to Count 7, not guilty.

2       As to Count 8, not guilty.

3       As to Count 9, not guilty.

4       As to count 10, not guilty.

02:34   5       As to Count 11, not guilty.

6       As to Count 12, not guilty.

7       As to Count 13, not guilty.

8       As to Count 14, not guilty.

9       As to Count 15, not guilty.

02:35   10      As to Count 16, guilty.

11      As to Count 17, guilty.

12      As to Count 18, guilty.

13      As to Count 19, guilty.

14      As to Count 20, guilty.

02:35   15      As to Count 21, guilty.

16      As to Count 22, guilty.

17      As to Count 23, guilty.

18      As to Count 24, guilty.

19      As to Count 25, guilty.

02:35   20      As to Count 26, guilty.

21      As to Count 27, guilty.

22      Dated at Milwaukee, Wisconsin, this 5th day of

23   December, 2016, signed by Judge Clevert.

24      THE COURT:  Would the clerk please provide to the

02:35   25   parties copies of the verdicts in this case.

3

1    With that, the Court turns to the government to

2   inquire how you wish to proceed with respect to this matter.

3   And in particular, are you requesting that the defendant be

4   remanded and, if so, on what basis?

02:36    5    MR. FROHLING: Yes, Your Honor. Thank you.

6    At this point, if I may address the Court, now that

7   Mr. Balsiger has been convicted of 12 counts, 12 felony

8   offenses, the question of his release or detention now falls

9   under 18 U.S.C. § 3143(a). It would be Mr. Balsiger's burden at

02:36   10   this point, given the change in circumstance, to prove by clear

11   and convincing evidence that he does not pose a flight risk or a

12   danger to the safety of another person or the community.

13    In this case regarding first the flight risk, in terms

14   of whether Mr. Balsiger can meet his burden, I would note that

02:37   15   he's now been convicted again of the 12 counts. We believe his

16   advisory guideline range will be 360 months to life based on the

17   amount of loss, number of victims, sophistication of the scheme,

18   instruction enhancement and leadership role.

19    This type of exposure, even if litigated, could give

02:37   20   Mr. Balsiger an incentive to flee. I would note that in a

21   letter e-mailed to the United States and the attorney for NCH on

22   September 10th of 2016, which was attached to a September 26,

23   2016 filing by the government, record 860, Mr. Balsiger

24   indicated that he has no problem engaging in conduct that would

02:37   25   risk more jail time because he has, quote, only a few years of

4

1    life anyway, end quote.  Presumably that conduct could include

2    flight.

3            Mr. Balsiger has demonstrated a belief throughout the

4    course of this case that the rules do not directly apply to him,

02:38  5    as was evident not only from the conduct described by the

6    witnesses at trial, including his efforts to have witnesses lie

7    as part of the obstruction conspiracy, but also Mr. Balsiger's

8    willingness to lie to the Court.

9            For example, the United States previously documented

02:38  10   Mr. Balsiger's false statements to the Court on April 6th of

11   2016.  That's also in record 860.  Mr. Balsiger had made claims

12   on that April 6 date via phone about his health and how his

13   health would prevent him from complying with the deadline the

14   Court wanted to impose.  As we explained in our filing, the

02:38  15   surveillance contradicted Mr. Balsiger's claims at that time.

16           The government also believes Mr. Balsiger perjured

17   himself throughout trial, for example, regarding the Food Lion

18   incident as well as the store tag defense and Mr. Balsiger's

19   claimed knowledge -- lack of knowledge in this case during his

02:38  20   testimony which was contradicted by objective evidence and

21   documents from the time.

22           Mr. Balsiger has the means to flee.  He's worked

23   abroad and traveled extensively both domestically and

24   internationally, including post indictment.  Just on the

02:39  25   pretrial release period here he traveled to Spain, Italy,

5

1    Greece, Ecuador, Canada, and that's in addition to frequent

2    travel which was allowed throughout Mexico for business reasons.

3            He resides near the border with Mexico, has business

4    holdings in Mexico, and has routinely traveled back and forth

02:39  5    from the United States to Mexico.

6            He remains quite wealthy.  We don't know what his

7    current net worth is.  We know what it was as reported to

8    Pretrial Services in 2007.  We do know that Mr. Balsiger has

9    made repeated statements to the media that he is wealthy enough

02:39  10   to fight this to the end and fight the government corruption to

11   the end.  And when Mr. Balsiger refused to hire counsel and

12   ultimately opted to represent himself in this matter, I know it

13   was not provided to the government but the Court reviewed

14   financial information indicating that in the Court's view

02:40  15   Mr. Balsiger had the money to hire a defense attorney should he

16   do so.  So he has those assets.  He has at least one going

17   business with operations in Mexico.  And he has represented in

18   letters to the United States that he has a, quote, team of

19   lawyers, end quote, ready for the civil suit related to this

02:40  20   case.

21           On one small point during witness preparation, one of

22   the witnesses indicated specifically that that person believed

23   Mr. Balsiger had assets in Greece.  A few weeks later during

24   Mr. Balsiger's testimony he indicated that he often would spend

02:40  25   part of the summer in Greece.

1          Taking a look at the docket in this case, record 518,

2     saw that Mr. Balsiger had requested the Court's permission to

3     travel in December of 2012 to Greece.  There was no explanation

4     give as to why.  Would only note that one because of the time

5     period.  The travel began on December 1st of 2012.

6     Mr. Balsiger, according to his passport, which he had provided

7     to the government as a potential defense exhibit during pretrial

8     proceedings, shows that he landed in Frankfort, Germany on

9     Sunday, December 2nd, presumably then traveled to Athens, and

10    was back in the United States on Tuesday, December 24th,

11    spending at most one full business day in Athens.  Not quite

12    sure what the purpose of that was while on pretrial release.

13          Finally, on the risk of flight, Mr. Balsiger has made

14    a number of statements to the media in this case including as

15    recently as two weeks ago, giving an interview to the El Paso

16    Inc. Newspaper, explaining that it was him against the world;

17    he's been there on a mountain before; he's very proud of himself

18    for standing up in this case.

19          He apparently provided a copy of his closing arguments

20    to the reporter.  Falsely claimed of an offer to plea deal of

21    one year in prison, something he falsely claimed during his

22    closing argument in this case.  And falsely claimed to have

23    suffered a, quote, small heart attack, end quote, during trial.

24          These statements at least raise the possibility as

25    Mr. Balsiger tries to meet his burden in this case that he could

7

seek to justify flight using that same narrative; namely, that

he's been the victim of a government overreach and conspiracy

and that he would rather stand up by refusing to willingly

appear for sentence and the service of any imposed sentence.  So

that's on the risk of flight, on the government's comments as to

whether Mr. Balsiger can meet his burden.

With respect to the danger to the community, we also

believe he'll have a difficult time with respect to that

showing.

As noted above or in my earlier remarks, he had

indicated on September 10th that he was willing to risk jail and

conduct that could expose him to jail because he only has a few

years of life.  Consistent with that, he appears to have

committed several felonies while on pretrial release in this

matter.  I mentioned the false statements to the Court on April

6th, as well as the perjury at trial.

In addition -- and we began to raise this on one

occasion pretrial and it was not relevant to the proceedings at

the time, but on at least two occasions during 2016,

Mr. Balsiger has sent some combination of either AUSAs or an

AUSA and NCH's attorney at least two emails that would appear to

meet the elements of extortion under 18 U.S.C. § 875(d).  The

first e-mail was dated July 1st of 2016, entitled, "False

Indictment," and was sent to the prosecution team.

In it he -- Mr. Balsiger indicates he believes the

1    government engaged in a series of illegal acts.  He threatened

2    to sue the AUSAs personally and hold the AUSAs personally and

3    financially accountable.  He indicated that this matter, should

4    it be pursued, would be a life-altering matter for the assistant

02:44    5    United States attorneys.

6         He further indicated that unless the AUSAs not only

7    dismiss the case, but direct all restitution money to him, all

8    restitution payments to him personally, or he would have the

9    prosecution team disbarred.  That would seem to cover the

02:44    10    elements of extortion under 875, namely, threats to harm the

11    reputation or property of another unless the sender receives

12    money.

13         The second email mail was sent to me and to an

14    attorney for NCH on September 10th, 2016.  That letter attached

02:44    15    to it was included with our filing at record 860.  Indicated

16    that he intended to accuse me and another attorney of crimes and

17    would have our bar licenses revoked unless we had money

18    redirected to him.  If we agreed to give him money, make

19    restitution to him, we could get on with our lives, otherwise he

02:45    20    was ready for war.

21         Those filings or communications, along with the

22    comment about life-altering, reminded the prosecution team of an

23    anonymous mailing that the U.S. Attorney's Office had received

24    in March 2012.  This was something that had been the subject of

02:45    25    a motion in limine with the Court, record 722.  In that

9

1   anonymous mailing, no return address, but from El Paso,

2   contained Mr. Balsiger's handwriting and an El Paso postmark.

3   Included an email that had been sent by Mr. Balsiger's attorney

4   at the time to Mr. Balsiger and printed from Mr. Balsiger's AOL

02:45   5   account.

6        Among other things there was a news article in that

7   packet about the prosecution of Senator Ted Stevens and an

8   article about an assistant U.S. attorney committing suicide.

9   Mr. Balsiger's handwriting was on that article.  It changed

02:46   10   Stevens to IOS.  And included in his handwriting suggestions

11   that suicide was likely for AUSAs Ingraham and Frohling, as well

12   as Special Agent Vitale and NCH's attorney as a result of this

13   case.

14        Finally, he has demonstrated a desire to intimidate,

02:46   15   harass individuals he viewed as witnesses in this case.  With

16   respect to two of his identified defense witnesses, he left them

17   voicemails saying, "Hey, I'm going to serve you with subpoenas.

18   I assume you're going to be hostile to me, but you should know

19   I'm also going to sue you civilly personally.  So although

02:46   20   you're my witness you better get an attorney because I'm going

21   to come after you civilly."

22        He indicates to one of them, "I've never met you, but

23   I will and it will be the fun."

24        Similarly, during the evening of October 26th, during

02:46   25   the trial in this case, and this was the day Mr. Balsiger went

1   by ambulance to St. Luke's and was not admitted, he emailed

2   NCH's attorney regarding the timing of when he intended to call

3   Mark Dennis as a witness, but included an indication that:  "We

4   have just received considerable documentation containing very

02:47   5   serious information on Mark Dennis."  And indicated that he

6   would probably call the lawyer because of that.

7          No such documentation was provided.  Mr. Balsiger

8   declined to call NCH's attorney.  And the purpose of that email

9   appeared simply to have been an attempt to intimidate his own

02:47   10   witness.

11          So it's for that reason we believe that Mr. Balsiger

12   is going to have a difficult time establishing he should remain

13   free.  Thank you.

14          THE COURT:  Mr. Balsiger, do you wish to respond?

02:47   15          MR. BALSIGER:  Yes.  This case has been going on 10

16   years.  Three years prior to that.  I have not fled.  I have

17   said I was not guilty.  You have found me not guilty on 15

18   counts, 12 you have.

19          I will -- I think it's my right to say that I will

02:48   20   fight this again.  And Mr. Frohling has taken my comments out of

21   context throughout the trial.  15 counts I think pertain to NCH,

22   the other 10 I think were to CMS.  One was the conspiracy and

23   then the obstruction.

24          I have given no indication at any time.  I have called

02:48   25   in each month, filled out reports.  I'm 63, almost 64.  My wife

1    is here, two of my four kids.  I have grandkids in El Paso.

2    Nothing in my life, no other crimes has given any indication

3    that I would not abide by the rules.

4         By the mere fact I'm here, by the mere fact that I've

02:49   5    defended myself.  And I think I had a right to defend myself

6    aggressively.  I don't know what the implication is because I

7    was pro se I did not have that right.

8         But I've given no -- no indication at all throughout

9    my entire life, much less being under scrutiny of this trial,

02:49   10   that I would not adhere to every single rule.

11        Mexico, I do not have a passport.  That has expired.

12   I did not renew it.

13        I was in Greece to address individual points in '12 to

14   wrap up my business interests there.  I had to sign some

02:49   15   documents.

16        I do not think I perjured myself.  I think 15 counts

17   of not guilty said that this was a difficult decision for you.

18        I've given my word my entire life, 13 years of this,

19   10 years of this coming up here today.  I see no reason why me

02:50   20   at my age, with my grandkids in El Paso, some in LA, that I

21   would act any differently but within the rules set by this

22   court.

23        For five weeks you saw me in this court and never once

24   to my knowledge did I violate your rules, intentionally, and

02:50   25   treated with respect.  To think otherwise I think would not be

12

1    fair.

2        There were so many things Mr. Frohling said that were

3    out of context.  In April I was exercising walking up

4    Mt. Cristo Rey.  That's what I was instructed to do.  The thing

02:51    5    that occurred in October, that information that we got was

6    subsequently introduced as an exhibit and used for Mark Dennis.

7        So I don't know what to say.  I think my past is

8    clear.  I ask to remain out.  I have no passport.  And there's

9    nothing to indicate that I would treat you or this court with

02:51    10    disrespect.

11        THE COURT:  I will come back to the issue of remand

12    momentarily.  I want to go through the statute before making a

13    decision in that regard.

14        Nonetheless, it is necessary for the Court to schedule

02:51    15    this matter for further proceedings.  And, therefore, I'd like

16    to discuss when this matter can come up for sentencing.

17        Would the clerk indicate what available dates we have

18    for the sentencing of Mr. Balsiger, with due regard for the

19    amount of time that may be necessary for the U.S. Probation

02:52    20    Office to prepare a presentence report and for the parties to

21    review and comment upon that report and to submit any arguments

22    or memoranda related to sentencing.

23        THE CLERK:  The parties -- Pretrial Services could

24    disclose the PSR by January 30th.

02:52    25        And then objections would be submitted to Pretrial

13

1    Services by February 13th.

2            And any sentencing memoranda could be submitted by

3    February 21st, with a sentencing date of February 27th.

4            MR. FROHLING:  That works for the government.

02:53   5        THE COURT:  Mr. Balsiger?

6            MR. BALSIGER:  Yes, sir.  That's fine.

7            THE CLERK:  1:30.

8            THE COURT:  I didn't confirm, does that allow less

9    than 35 days from the disclosure to the -- it does not.

02:53  10            Mr. Balsiger, as a defendant in a criminal case the

11   law provides that you are entitled to not less than 35 days

12   between the date the presentence report is disclosed and the

13   actual sentencing hearing.  However, you may, if you wish, waive

14   that provision of the law which is generally designed to give

02:54  15   you sufficient time to consider all the matters in the

16   presentence report and to discuss the same with any attorney you

17   may retain for that purpose.  Or, if you wish to proceed without

18   the help of a lawyer, you can use that time for your own study.

19   What is your desire?

02:54  20            MR. BALSIGER:  May I consult, sir?

21            THE COURT:  You certainly may.

22            (Defendant and standby counsel confer.)

23            MR. BALSIGER:  Your Honor, I would not like to waive

24   my right.  I would -- of the 35 days.  I would propose the 2/21

02:55  25   move to 2/28, and then 27, a week later as well.  If possible.

14

1    THE COURT:  What will our schedule accommodate?

2    THE CLERK:  March 6th at 1:30 for sentencing.

3    MR. FROHLING:  That would work for the government.

4    MR. BALSIGER:  Thank you, sir.  That works for me.

02:56   5    THE COURT:  I'll take a brief recess.

6    (Recess taken at 2:56 p.m., until 3:05 p.m.)

7    THE COURT:  The Court has considered the arguments by

8    the government and the defendant, Mr. Balsiger, respecting the

9    question of whether or not Mr. Balsiger should be released

03:05   10   pending sentencing.

11        In considering those arguments, the Court has looked

12   closely at Title 18, Section 3143(a).  In doing so, it is noted

13   that the Court is to consider whether the person is likely to

14   flee -- that is, in this case Mr. Balsiger is likely to flee or

03:06   15   pose a danger to the safety of any other person or the community

16   if released under Section 3142(b) or (c).

17        Consequently, any belief on the part of the Court that

18   Mr. Balsiger may be a danger to himself is not really addressed

19   by this portion of the applicable statute.  Whether Mr. Balsiger

03:06   20   may flee is therefore the thing that the Court should pay most

21   attention to.

22        Here, Mr. Balsiger has attended proceedings as

23   directed by the Court and has done so faithfully.  He has

24   offered his own defense.  And, in addition, has stated very

03:07   25   forcefully that it is his intention to appeal a conviction in

1    this matter.

2            It therefore occurs to the Court that this argument by

3    Mr. Balsiger is one that strongly suggests that he will attend

4    further proceedings as directed by the Court.  That is the only

5    way that he is likely to be able to voice his defense in a

6    higher court.

7            However, Mr. Balsiger's ability to travel and the

8    proximity of his home to the border, which I note has been the

9    subject of a lot of discussion lately, suggests to the Court

10   that there needs to be limitations on Mr. Balsiger's movement,

11   notwithstanding the fact that he notes that his passport has

12   expired.  The fact that Mr. Balsiger has traveled extensively

13   and has seen places of this world that many people have never

14   ventured also suggests that Mr. Balsiger would find it easy to

15   adjust to places outside of the United States should he flee.

16           Consequently, the Court will release Mr. Balsiger

17   pending sentencing.  And I say this because after hearing the

18   initial arguments of the government, the Court certainly felt

19   that there was some reason -- there was maybe good reason to

20   remand Mr. Balsiger.  But after further reflection and further

21   review of the applicable law, the Court concludes that

22   Mr. Balsiger should be placed on electronic monitoring pending

23   sentencing in this case.  And he is, therefore, to go to the

24   U.S. Probation Office where he will be -- he is to be

25   interviewed and fitted with electronic monitoring, provided that

16

1    can be accomplished.

2            Is there a representative from the U.S. Probation

3    Office in the courtroom?

4            PROBATION OFFICER:  Yes, Your Honor.

03:10  5            THE COURT:  Would you please come forward and state

6    your appearance for the record.

7            Mr. Dragolovich, I believe?

8            PROBATION OFFICER:  Daniel Dragolovich with U.S.

9    Probation.

03:11  10            THE COURT:  Mr. Dragolovich, as much as Mr. Balsiger

11    does not reside in Wisconsin, how and under what circumstances

12    would you be able to accomplish electronic monitoring if he is

13    to stay in his hometown of El Paso, Texas pending sentencing?

14            PROBATION OFFICER:  I believe the defendant is

03:11  15    currently on supervision with Pretrial Services in El Paso, and

16    we've been in periodic contact with them throughout the pendency

17    of this case.  We would contact them to let them know and they

18    would set up an appointment to get that set up as soon as he

19    arrives back in El Paso.

03:11  20            THE COURT:  Mr. Balsiger, do you know of any reason

21    why you would not be able to satisfy the conditions of

22    electronic monitoring if that is imposed in this case?

23            MR. BALSIGER:  No, sir.

24            THE COURT:  Please note that the Court is going to

03:12  25    keep in place all of the other conditions of your release

17

1    pending sentencing in this matter.

2            You are, therefore, to submit to your initial

3    interview with probation so that it can begin the preparation of

4    a presentence report immediately after this hearing has

5    concluded.

6            You are also to travel directly to your home in

7    El Paso, Texas, and are to report to the Pretrial Services

8    office in El Paso, Texas as Mr. Dragolovich or his colleagues in

9    Pretrial Services in the Eastern District of Wisconsin will

10   direct.

11           Any violation of these conditions pending sentencing

12   will result in the Court concluding that it is necessary for you

13   to be retained -- I should say detained in this case until your

14   sentencing hearing and will obviously mean that you will be

15   subject to additional charges as the government may determine to

16   be appropriate under the circumstance.

17           Is there anything else at this time?

18           MR. BALSIGER:  I have some questions.

19           THE COURT:  Yes.

20           MR. BALSIGER:  So I meet with someone now?

21           THE COURT:  Yes.

22           MR. BALSIGER:  I see.  Okay.

23           THE COURT:  And they will give you -- they will

24   conduct an initial interview.  Because of the fact that you're

25   living in El Paso it is imperative that this office get certain

1   essential information so that it can begin the process of

2   preparing the personal history, criminal history and guideline

3   determinations that will be utilized at the time of sentencing.

4           Please be mindful that guidelines as may be discussed

03:14   5   in the presentence report are advisory, they are no longer

6   mandatory, however, the Court will take those into account as

7   required by 18 U.S.C. § 3553(a)(2).

8           MR. BALSIGER:  Does that occur here in this courtroom

9   or do I go to a room?

03:14   10           THE COURT:  Mr. Dragolovich will direct you to his

11   office which is on the southern side of this building on the

12   basement level.

13           MR. BALSIGER:  Got it.

14           THE COURT:  Is there anything else at this time?

03:14   15           MR. FROHLING:  No, Your Honor.  Thank you.

16           THE COURT:  Oh, yes, there is something.  I have a

17   huge quantity of materials that were utilized in the trial in

18   this case.  I'd like to find out whether there is any reason why

19   the huge assemblage of material cannot be returned to the

03:15   20   government for safekeeping pending the final disposition of this

21   case and/or sentencing.  Do you have any objection to that,

22   Mr. Balsiger?

23           MR. BALSIGER:  No, sir.

24           THE COURT:  Very well.  Those documents are to be

03:15   25   returned to the U.S. Attorney's Office and removed from my jury

19

1    room.  I have a jury trial coming up in about another week or so

2    and that room will be needed for that trial.

3              MR. FROHLING:  Got it, Your Honor.  Thank you.

4              THE COURT:  Have a good day.

03:15  5              THE BAILIFF:  All rise.

6              (Proceedings concluded at 3:15 p.m.)

7                              *    *    *

C E R T I F I C A T E


        I, JOHN T. SCHINDHELM, RMR, CRR, Official Court
Reporter for the United States District Court for the Eastern
District of Wisconsin, do hereby certify that the foregoing
pages are a true and accurate transcription of my original
machine shorthand notes taken in the aforementioned matter to
the best of my skill and ability.


Signed and Certified January 27, 2018.

/s/John T. Schindhelm

John T. Schindhelm


              John T. Schindhelm, RPR, RMR, CRR
              United States Official Reporter
              517 E Wisconsin Ave., Rm 236,
                Milwaukee, WI 53202
             Website: WWW.JOHNSCHINDHELM.COM

